**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Jack Vaughan

   v.                                          Civil No. 05-cv-223-JD

Bernice A. Ray
Elementary School et al.

**O R D E R**

Proceeding *pro se and in forma pauperis*, plaintiff Jack Vaughan has filed a complaint, alleging that he has been subjected to gender-based disparate treatment in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq.  He also alleges claims for defamation and breach of contract under New Hampshire state law.  Named as defendants are the Bernice A. Ray Elementary School ("Ray School") and three of its employees: Kenneth Greenbaum, Superintendant; Bruce Williams, Principal; and Janice Lavoie, Assistant Principal.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  See United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B).  For the reasons stated below, I find that Vaughan has alleged

sufficient facts to state a cause of action under Title VII.

## Standard of Review

In reviewing a *pro se* complaint, this court must construe the pleading liberally and in favor of the *pro se* litigant.  See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that *pro se* pleadings are given fair and meaningful consideration.  See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988).

## Background

Construing the allegations in the complaint in the light most favorable to Vaughan, the material facts are as follows. Vaughan was employed as a teacher's assistant with the Ray School during two academic years: September 2002 through June 2003 and September 2003 through March 2004.  During the first year, he

received an excellent performance evaluation.  During the second year, four second-grade teachers filed complaints against him, accusing him of engaging in inappropriate behavior with female students and failing to set appropriate boundaries with those students.  As a result of the complaints filed against him, Vaughan was subjected to mandatory counseling sessions with school officials, suspension from the Ray School and eventual discharge from employment.

### Counseling Sessions

In November 2003, Vaughan was called into a meeting without notice by two school officials, Principal Bruce Williams and Psychologist Lois Roland, and was counseled to reduce the amount of time he spent with a group of six second-grade students (referred to as his "shadow kids") during recess.  Williams directed him to set boundaries with the children, two of whom allegedly liked to hold Vaughan's hands while they walked around the playground.  Roland forcefully and repeatedly directed Vaughan to spend more time supervising boys rather than girls, and Williams allegedly endorsed her statements. According to Vaughan, each day he supervised 50 boys and 50 girls during the first recess period and 100 boys and 100 girls during the second

period.  Roland allegedly showed no interest in Vaughan supervising the remaining 45 to 90 girls who were not "shadowing" him.  She explained to Vaughan that the public was more suspicious of men (rather than women) supervising girls.  Over the next two months Vaughan complied with directives, thereby reducing the amount of time spent with the "shadow kids" and increasing the amount of time supervising boys.  According to Vaughan, he was never advised that his behavior was inappropriate and only on rare occasions held the hands of the two shadow kids.

In January 2004, Williams and Assistant Principal Janice Lavoie summoned Vaughan to a meeting without notice and pressured him to resign on the basis that three teachers had filed complaints against him.  Without identifying the complainants or charges filed, Williams and Lavoie asked Vaughan to resign.  When Vaughan refused he was suspended from the Ray School.

### Complaints Filed Against Vaughan

Two weeks after his suspension, Vaughan was informed of the substance of the complaints filed against him by three second-grade teachers.  First, Barbara MacNamee complained that he waved to two "shadow kids" at a sing-a-long and allowed one of the girls to give him a hug.  Vaughan contends that MacNamee never

objected when he received hugs from boys and that MacNamee too received hugs from students.  He further contends that "the music teacher had a long standing tradition of allowing students to give her hugs as they left the School at the end of the day."  Second, Judy Harvey, complained that Vaughan "entrapped" students by wrapping his arms around them.  She further complained that Vaughan wrote a story for the students that contained inappropriate violence and an unnerving message, even though Harvey evaluated the story beforehand and invited Vaughan to read it on several occasions.  Harvey also accused Vaughan of presenting an inappropriate photograph that inspired the story even though she had previously approved his use of the photograph.  Third, Jane Metcalf complained that Vaughan "entrapped" students by holding their hands and ordering students to stand at attention inside the Ray School lobby on one occasion.  Each of the above-named complainants allegedly worked with Vaughan but never notified him of the purported impropriety of his behavior or otherwise advised him of any problems.

<u>Background Investigation</u>

Vaughan consented to and passed a standard background investigation prior to being hired.  After complaints were filed

against him, however, the Ray School conducted a second and more extensive background investigation without his consent.  The second investigation revealed that he was terminated by a former employer, the Croydon School, for "boundary issues."  Internal documents and memos generated during the course of the second investigation allegedly confirm that Vaughan was terminated by the Ray School because of his dismissal from the Croydon School. Following Vaughan's dismissal on March 10, 2004, the Ray School allegedly sent notices to several parents, alerting them that Vaughan was considered dangerous to children.  Greenbaum, the Superintendent of Ray School, allegedly wrote to government officials in New Hampshire and Vermont, asking them to ban Vaughan from working with children.  Vaughan subsequently was banned from public libraries and child care centers in New Hampshire and Vermont, where previously he was granted permission to read stories to children.

Employment Agreement

Without providing any supporting documents, Vaughan broadly alleges that the Roy School breached its employment agreement with him.  He claims that "the School failed to honor its Union contract with me and the employment agreement it forged with all

of us educational aides."  (Complt. ¶ 20)  He further claims that defendants breached the employment agreement by suspending and terminating him without adequate written notice and by failing to provide him with copies of written statements that formed the basis of the disciplinary actions initiated against him.  As a result of defendants' actions, Vaughan allegedly was denied the opportunity to respond to the complaints filed against him.

### Federal Proceedings

Vaughan now brings this suit, alleging that defendants' actions constitute gender-based discrimination in violation of Title VII.  As a predicate to bringing a civil action in federal court, Title VII requires a complainant to first file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") setting forth the claim and its factual basis.  See Clockedile v. New Hampshire Dep't of Corr., 245 F.3d 1, 6 (1st Cir. 2001).  Without providing any relevant dates or supporting documents, Vaughan alleges that his administrative remedies have been fully exhausted before the New Hampshire Commission for Human Rights and the EEOC.  Accepting his allegations as true, I conclude for purposes of preliminary review that his claims have been administratively exhausted.

**Discussion**

Vaughan alleges that he was discriminated against on the basis of gender while employed as a teacher's assistant at the Ray School. He allegedly was subjected to disparate terms and conditions of employment and discriminatory discharge. Accordingly, I construe his complaint to allege a claim for gender-based disparate treatment in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq.

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.'" Reed v. MBNA Mktg. Sys., 333 F.3d 27, 31 (1st Cir. 2003) (quoting 42 U.S.C. § 2000e-2(a)(1)). "'Disparate treatment' is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their . . . sex." Rosa v. Park West Bank & Trust Co., 214 F.3d 213, 215 (1st Cir. 2000) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)). "The core inquiry in . . . disparate treatment cases is whether the defendant intentionally discriminated

against the plaintiff because of [his or] her gender.'" Sullivan v. Stanley, No. 03-cv-387-SM, 2005 WL 1074275, at *4 (D.N.H. April 29, 2005) (quoting Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004)).

Absent any direct evidence of discrimination, a plaintiff's claim must be analyzed under 'the burden-shifting analysis first established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).'" Chungchi Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003)).

> Under the McDonnell Douglas analysis, a plaintiff must establish a prima facie case, which in turn gives rise to an inference of discrimination. See Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998). The employer then must state a legitimate, nondiscriminatory reason for its decision. See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44 (1st Cir. 2002). If the employer can state such a reason, the inference of discrimination disappears and the plaintiff is required to show that the employer's stated reason is a pretext for discrimination. See id. at 45.

Ugurhan Akturk Kosereis v. Rhode Island, 331 F.3d 207, 212 (1st Cir. 2003)). "Generally a plaintiff establishes a prima facie case by showing that (1) he is a member of a protected class; (2) he was qualified for the job; (3) the employer took an adverse employment action against him; (4) the position remained open or was filled by a person with similar qualifications." Id. at 212-

13 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (applying and redefining the McDonnell Douglas analysis in a case alleging discriminatory demotion and discharge) and Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000)(applying McDonnell Douglas standard to sex discrimination case alleging discriminatory discharge)).

Under this standard, Vaughan has stated sufficient facts to allege a gender-based disparate treatment claim in violation of Title VII.  He alleges that defendants subjected him to disparate treatment and discriminatory discharge on the basis of gender.  Although the record is silent as to his qualifications, Vaughan received an excellent performance evaluation during his first year of employment.  Defendants subsequently took adverse actions against him by pressuring him to resign, suspending him when he refused to resign and terminating him without adequate written notice.  Other similarly situated female employees were treated more favorably than Vaughan.  While it is unclear whether his former position remains open or was filled by a person with similar qualifications, for purposes of preliminary review I conclude that Vaughan has stated sufficient facts to allege a gender-based disparate treatment claim in violation of Title VII.

II. <u>State Law Claims</u>

A federal court exercising original jurisdiction over federal claims has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C.A. § 1367(a). <u>See</u> <u>also</u> <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966) (holding that supplemental jurisdiction exists where the state and federal claims derive from a common nucleus of operative facts); <u>accord</u> <u>Rodriguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1175-77 (1st Cir. 1995). Because Vaughan's state law claims for defamation and breach of contract stem from the same core of operative facts that give rise to his federal claims, I recommend that supplemental jurisdiction be exercised over them.

### Conclusion

Without commenting on the merits of the complaint, I find that Vaughan has sufficiently alleged a cause of action under Title VII premised upon gender-based disparate treatment and therefore order the complaint served on the defendants. <u>See</u> LR 4.3(d)(1)(B)(iii).

Accordingly, I direct the Clerk's Office to issue plaintiff

11

the necessary summonses.  See LR 4.3(d)(1).  Plaintiff may effect service of process within 120 days, in accordance with Fed. R. Civ. P. 4.  Service shall include a copy of the complaint and a copy of this order.  Defendants shall answer or otherwise plead within twenty (20) days of acceptance of service.  See Fed. R. Civ. P. 12(a)(2).

Plaintiff is referred also to Fed. R. Civ. P. 5, which requires that every pleading and every written motion, notice, and similar paper be served on defendants, which service shall be made by mailing the document to defendants' attorney(s).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: September 16, 2005

cc:   Jack Vaughan, *pro se*