**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

Jack Vaughan,                                    2007 MAY -7  A II: 54

      Plaintiff

v.

Bernice A. Ray Elementary School,          Civil Action No. 1:05–cv–223–JD
Kenneth Greenbaum, Bruce Williams,
and Janice Lavoie,

      Defendants


## PLAINTIFF'S MOTION TO COMPEL COMPLETE ANSWERS TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS


NOW COMES Plaintiff, JACK VAUGHAN, pro se, and states as follows:

1.      On November 22, 2006, the Plaintiff propounded Interrogatories and Requests for Production on all the Defendants.  A copy is attached as EXHIBIT-C.

2.      The Defendants' answers were initially due by December 22, 2006, and then extended, at the request of the Defendants, to March 14, 2007.

3.      The Defendants answered the Interrogatories on March 14, 2007.  The Plaintiff received the answers on March 15, 2007.  A copy is attached as EXHIBIT-D.

4.      The Defendants' answers to interrogatories were incomplete and dishonest; in addition, the Defendants did not provide all the documents and things requested.

5.      In answering Plaintiff's Interrogatories, the Defendants repeatedly failed to provide detailed answers as requested pursuant to Fed. R. Civ. P. 26(g)(1).

6.      In response to the Plaintiff's request that the Defendants provide a list of everyone mentioned in their Interrogatory answers, as well as anyone else who may have knowledge of the matters at issue, by name, address, and telephone number, each of the Defendants failed to provide a list pursuant to Fed. R. Civ. P. 26(a)(1)(A) and instead answered that names were set forth in their other interrogatory answers.

7.      Similarly, in response to the Plaintiff's request that the Defendants provide a list of all documents attached to their interrogatories, as well as all those used in their responses, but not provided, each of the Defendants failed to provide a list pursuant to Fed. R. Civ. P. 26(a)(1)(B) and likewise answered that documents were attached to their prior interrogatory answers.

8.      The Defendants failed to provide authorizations pursuant to Fed. Rules of Civ. P. 26(a)(5) and 26(b)(1) which would permit the Plaintiff to obtain information relevant to this case from the Defendants' former employers, from the Hanover, New Hampshire, Police Department, and from the New Hampshire and Vermont Departments of Education.

9.      In answering Plaintiff's Interrogatories, the Defendants did not answer truthfully pursuant to Fed. R. Civ. P. 26(g)(1).

10.     A detailed description of the Plaintiff's complaints addressing individual Interrogatory objections and answers by the Defendant, as well as the Defendant's responses to individual Document Requests follows.

--------------------------------------------------------------------------------

11.     **DEFENDANT KENNETH GREENBAUM'S ANSWERS:**

12.     **ANSWER-2**   No authorization for employment records provided.

13.     **OBJECTIONS-5**   This objection implies there were many teacher complaints, too many for Dr. Greenbaum to supply, yet he stated no teachers complained to him--Principals did.  He provided no details of the Principals' complaints.

However burdensome this response might be, it is a big part of the story regarding the complaints against the Plaintiff.  The Plaintiff is entitled to know all that Dr. Greenbaum knows, and did, and said, and heard regarding the complaints.  This question is limited to the complaints received by the administrators from the beginning of the Plaintiff's time at Ray School to the present.   Dr. Greenbaum says these complaints are the reasons the Plaintiff was dismissed, therefore, they are relevant.

14.   **ANSWER-5**  – a –   The Defendant did not describe in full "each instance of teachers complaining to Ray School Principals," as requested, and did not mention or even estimate the dates of when he received complaints.

– **b** –  He provided no answer about how each complaint was dealt with.  He merely stated they were dealt with.

15.   **OBJECTIONS-6**   This objection implies there were many other complainers besides teachers, too many for Dr. Greenbaum to supply, yet he stated no others complained to him.  However burdensome this response might be, it is a big part of the story regarding the complaints against the Plaintiff and the matters at issue.  This question is limited to the complaints received by administrators from the beginning of the Plaintiff's time at Ray School to the present.  Dr. Greenbaum says these complaints are the reasons the Plaintiff was dismissed.  The Plaintiff is entitled to know about them.  They are relevant.

16.   **ANSWER-6**  – a –   The Defendant failed to describe "each instance of others complaining to Ray School Principals," as well as names and dates, as requested.

– **b** –  He provided no answer about how each complaint was dealt with, rather, simply declared they were dealt with.

17.   **ANSWER-7**  – c –   The Defendant did not **detail each** directive he issued.

– **d** –  The Defendant did not name **all** others involved in each action he took, or explain their involvement in full.  People such as: some official of the Croydon/Newport

School District; the former Superintendent of the Croydon/Newport School District, William Gauthier; some official at the Family Place Child Center; some official at the Dartmouth Child Center; or the people at the New Hampshire and Vermont Education Departments he admits he wrote to regarding the Plaintiff; and possibly others.

18.     **ANSWER-8  – a –**   The Defendant "does not recall," but did not consult any records or subordinates involved that might have refreshed his memory.

**– b –** The Defendant "does not recall" meeting Bruce Williams, but admits all his answers were only from memory, and that he did not use any documents.  Apparently he did not consult Mr. Williams either.

**– c –** The Defendant "does not recall" anyone from his Superintendent's office being involved, but admits he answered these interrogatories from memory only.  He did not use any documents, and apparently did not consult any of his former subordinates from his office.  While it is true Principal Williams reported directly to the Superintendent as he stated in his answer, it is also true that everyone in the Superintendent's office was his subordinate and subject to his directives.  He could have chosen to involve any of them.

19.     **ANSWER-9  – a –**   The Defendant does not remember details of his talk with his Principals just prior to the Plaintiff being asked to resign, but did not consult records or the other Defendants to refresh his memory.  He gave almost no details about what was discussed with Bruce and Janice; no details about "retracing of past work history;" did not describe in full detail what he meant by his statement that the Plaintiff "had failed to observe physical boundaries with students."  The question asked for full details not for vague phrases such as "physical boundaries."

**– b –** The Defendant did not consult records or provide even an estimate of the date or time he held this conversation with his Principals, even though he knows Janice's statement mentioning this conversation was recorded on January 7, 2004.  Teacher

Jane Metcalf went to Janice Lavoie at noon on January 7, 2004, to complain about the Plaintiff.  Janice wrote an account of Jane's meeting with her on that same date.  And in that account wrote,

> "Bruce and I discussed this issue (Jane's complaint), talked with Ken Greenbaum, retraced past work history, met with all second grade teachers."
> (See  EXHIBIT-D, "Defendant Lavoie's Answers," [Attachment-5, DEF-0001, 'Sexual Harassment Complaint Form–Title IX – Jane Metcalf,'  last paragraph, – January 7, 2004, by Janice Lavoie], dated March 14, 2007.)

Janice's statement shows that Ken Greenbaum met with Janice and Bruce Williams on that day (January 7, 2004) after Noon.  Merely by reading the Defendants' own exhibits, the Superintendent could have answered this interrogatory in much more detail, but he chose not to.

– **d** – The Defendant answered:

> "As a result of the information I received from Mr. Williams and Ms. Lavoie, I determined that it was appropriate to suspend Mr. Vaughan... and that a hearing would be scheduled about this matter..."

but he did not specify what "information" he received from his Principals.  He did not say when he told Mr. Williams and Ms. Lavoie of his decision to suspend the Plaintiff; did not say if he told others about it; did not mention anything about the Principals' request to the Plaintiff on January 7, 2004, to resign.  Certainly the Principal did not ask for a resignation without the Superintendent's knowledge and approval.

20.   **ANSWER-10**   The Defendant's answer states:

[1]    "I remember conferring with both Mr. Williams and Ms Lavoie several times about the matter of Mr. Vaughan's failure to comply with Mr. William's directive to observe appropriate physical boundaries with students."

The Defendant offered no details of what the **conferrees** discussed; no explanation of just how Mr. Vaughan **failed to comply**, no statement of what Mr. William's **directive** was, and no explanation of what **physical boundaries** Mr. Vaughan was supposed to observe.  Students and teachers involved were not identified.  Events were not described or placed in location and time.  The Defendant deliberately defied the intent

.. 5 ..

of discovery in order to assure the Plaintiff would learn nothing from him and nothing about the actions undertaken by the Defendants while the Plaintiff was under suspicion and condemnation at the Ray School.

> [2]     "The subject matter discussed dealt with the events that led up to the situation that ultimately resulted in Mr. Vaughan's dismissal."

The Defendant deliberately failed to disclose the **subject matter** discussed or the content of the discussion; deliberately failed to disclose **the events** that led up to the unspecified situation; deliberately failed to disclose **the situation** that resulted in dismissal.

> [3]     "I recall that these events included several occasions when Mr. Vaughan had not observed appropriate physical boundaries with students."

**The events** again; again not explicit.  No details were offered about what **occasions,** or when, or where.  The Defendant again refused to disclose just what **physical boundaries** Mr. Vaughan failed to observe.

> [4]     "I recall that in a meeting with Mr. Vaughan, Mr. Williams had made clear his expectations, and that Mr. Vaughan subsequently did not meet these expectations."

Nothing could be less **clear** than Mr. Williams' **expectations**.  What expectations?

> [5]     "Mr. Williams and I felt that the insubordination of an employee was a very serious matter and that it was cause for Mr. Vaughan's suspension..."

What **insubordination**?  Whatever **caused** Mr. Vaughan's suspension is not possible to figure out from this sentence or from the Defendant's entire answer to this interrogatory.  This answer is intentional gobbledygook deliberately designed to prevent the Plaintiff from discovering the full story of what went on inside administrative circles at the Ray School during the Plaintiff's ordeal.  Rather than disclose facts, the Defendant evaded them.  Rather than provide requested details, the Defendant withheld them.  Rather than reveal information, the Defendant kept it hidden.

21.     **ANSWER-11**  The Defendant omitted part of the interrogatory in his copy.  He left out the final sentence which read:  "If so, when?"  His answer states that he

decided to ask for the Plaintiff's resignation before suspending him; which would put that decision sometime prior to January 13, 2004.  The Defendant could have pinpointed that decision to at least that moment in time, but instead, chose to provide no date at all for his decision.

22.   **ANSWER-12**   The Defendant failed to explain fully, as requested, the details of how he came to get in touch with the Plaintiff's previous employers.

23.   **ANSWER-14**   **– b –**   The Defendant does not remember the person he talked to at the Croydon School, but does remember that **she** was a she and that she mentioned that term used so often in these answers,  "boundary issues."

> "...she told me... that school officials were uncomfortable with boundary issues in Plaintiff's relationships with students.  Of particular concern was Mr. Vaughan's attempts to invite students to come to his house."

The Defendant can not remember the details of this conversation, can not remember this person's name or even her title at the School District, can not remember when he talked with her, can not remember the details of how he went from her to talking with the person who was the former Superintendent of the Croydon School at the time the Plaintiff worked there.  And likewise, he can not remember the details of his conversation with this former Superintendent, other than that his name is William Gauthier and that Mr. Gauthier also used the phrase so often repeated in the Defendant's answers, "boundary issues" in replying to Dr. Greenbaum's inquiries.  The Defendant remembers what he wants to remember in his answers.  And what he wants to remember are accusations made against the Plaintiff.  Other than accusations he is unable to remember details of conversations, meetings, decisions, or actions he participated in during his handling of these matters.

24.   **ANSWER-15**   The Defendant's answer refers to the Croydon Police only, while the question asked about **any** Police officials or State agency officials.  And it did not ask merely about documents, but about any **involvement**  with Police or agencies.

The answer does not address these elements of the question.

– Also, the question asked for authorization for the Plaintiff to obtain copies of documents from the Hanover Police.  No authorization was provided.  The request for authorization was ignored.

25.   **ANSWER-16**   The Defendant did not disclose in full his contacts and communications with people regarding the Family Place.  He also ignored the question about the Family Place officials mentioned in School memos he submitted to the New Hampshire Human Rights Commission during its investigation of the Plaintiff's complaint.

26.   **ANSWER-17**   The Defendant's answer is **false**.  In September of 2004, he provided the New Hampshire Human Rights Commission and the Plaintiff with School memos that referred to Elaine Guenet and John Bonfiglio.

(See  EXHIBIT-G, Respondent's "Response to [N. H. Hum. Rights] Commissions 1st Request for Information––Exhibit-A," pages 44 & 45, dated September 21, 2004, from Edward Lawson.)

27.   **ANSWER-18**   The Defendant's answer is **false**.  He stated:

"My involvement was in investigating events that had already occurred."

The Defendant conferred with Principal Williams and Assistant Principal Lavoie, at least, and perhaps the second grade teachers, on January 7, 2004.  That was prior to some events teachers complained about and one week prior to the suspension meeting of January 13, 2004.  Also, the Defendant admits discussing the suspension and resignation with the Principals prior to that January 13, 2004, meeting.  The Defendant was involved prior to some of the events which led to accusations against the Plaintiff.  And he did direct the Principals to ask for the Plaintiff's resignation and to suspend him, those Principals did not do that on their own or in defiance of the Superintendent.

28.   **ANSWER-19**   **– a –**   The Defendant answered:

"As matters related to child welfare between state agencies and those reporting to them are regulated by child protection laws, it is not appropriate for me to

.. 8 ..

release this information."

The Defendant's answer is false. He already released, to the New Hampshire Human Rights Commission and the Plaintiff, two letters he authored and sent to the New Hampshire and Vermont Departments of Education reporting on misconduct by the Plaintiff. The letters he wrote each referred to what he termed "a rather disturbing position paper" authored by the Plaintiff. Certainly, if he already provided the two letters to the Plaintiff, he can't reasonably claim now he is not authorized to release them to the Plaintiff. The Plaintiff is entitled to see all that the Defendant wrote to the Education Departments, including the so called "disturbing" position paper, as well as, all responses he received from the Departments.

– While he proclaimed that the Plaintiff could request this information from the Education Departments, the Defendant refused to provide the Plaintiff, as requested, with the authorization that will enable him to do precisely that.

– **b** – The Plaintiff is interested in what law the Defendant relied upon specifically; not what the law is generally. For example, the law referred to does not direct the Superintendent to use Education Departments to get a person banned from working with children in any capacity. Education Departments deal with teacher certifications.

    29.    **ANSWER–20**  The Defendant's answer is incomplete. It includes almost no details of the Defendant's discussion with someone at the Dartmouth Child Care Center. And it reveals no names, dates, places, or the manner of communication.

    30.    **OBJECTIONS–21**  This objection implies there are many people, far too many to list, but the Defendant listed no one and refers to previous answers which in fact contain only a small number of names. Referring to previous answers is not providing a list, as requested. The Defendant asked the same of the Plaintiff; so he knows such a question is legitimate. Since the list asked for is everyone the Defendant knows who is involved in the matters at issue, nothing could be more relevant than who

these people are and how to get a hold of them in order to find out what they know about these matters.

31.   **ANSWER-21**   The Defendant's answer is incomplete.  It includes no list. And it is **false**.  The Defendant does have further information other than what he provided.  He knows names of families and students at Ray School who were involved in the matters at issue.  The "Notice to Parents" was sent to at least 100 families.  He talked with School Board members.  Even the names he mentioned in his other answers include no addresses or phone numbers.  He got a hold of Superintendent William Gauthier, for example, but failed to provide his address or phone number.

32.   **ANSWER-22**   The Defendant failed to provide a list of documents, as requested.  In addition, his admission that he used no documents in responding to the interrogatories, reveals his contempt for the purpose of discovery in this case.  He has deliberately thwarted the Plaintiff's ability to know and obtain pertinent information and evidence, and thwarted justice.  He used the ruse of "I don't recall" to avoid providing information he could have provided by referring to pertinent documents or his own notes.

------------------------------------------

33.   **OBJECTIONS-S.1**   It is not burdensome to provide certification of a few formal educational achievements.  The request is the same a candidate for Superintendent would likely be asked by prospective employers.  Rest assured, Dr. Greenbaum does not tell employers asking for copies of his credentials that their requests are too burdensome.  Dr. Greenbaum claims he has earned various degrees. The Plaintiff is asking him to verify those claims.  It would matter, if his claims were not true.

34.   **DOCUMENTS-S.2**   The answer is **false**.  The Defendant admits in his answers he warned someone at the Dartmouth Child Care Center about the Plaintiff.

35.   **DOCUMENTS-S.3**   This document request was copied wrong by the Defendant.  The correct request read:

> "Please provide copies of all documents you have **access** to or records you have regarding the Plaintiff's work **at** the Croydon Village School."

36.   **OBJECTIONS-S.5** – Dr. Greenbaum is talking about only two one-page letters.  It is an easy task for him to provide them.  However, they may not be the only letters he sent to the Education Departments.  If there are others, he never sent them to the Plaintiff or the N. H. Human Rights Commission.  Also, the request is for all attachments included in any correspondence such as the one he called a "rather disturbing position paper."   The Plaintiff never received any  attachments.  Furthermore, it is most likely each Department of Education replied to his correspondences, but he never provided their replies.  The Plaintiff is entitled to have the same information and evidence in this suit as the Defendant has.

– Dr. Greenbaum proclaimed he was acting according to law in communicating with these State departments.  The Plaintiff wants him to verify that, by providing the precise copy of the laws––the precise wording he relied upon in complying with the law.  What matters is what he used, not what the law is generally.  He may have misused the law, used law that was inappropriate, used out-of-date versions of the law, or used copies of the law that were inaccurate.  In addition, the Defendants asked for many documents from the Plaintiff that they already had––or could obtain by themselves.  They asked for what he had––what he relied upon, because they know what he relied upon may be different than the documents they have access to.  They asked for his Ray School job description and various handbooks he had from Ray School, even though they had copies of those documents already.  Furthermore, the Defendants provided "Complaint" documents from teachers and Principals to the N. H. Human Rights Commission and to the Plaintiff, again and again, even though they provided them before and knew the Plaintiff had them already.  On several occasions the Plaintiff has provided those same

.. 11 ..

"Complaint" documents back to them.

37.   **DOCUMENTS-S.5**  The Defendant gives no indication he communicated with or received communications from the Education Departments other than his two letters of March 17, 2004, even though the Defendants provided the N. H. Human Rights Commission and the Plaintiff with School memos showing communications with both the N. H. and Vt. Education Departments.  The Defendants now claim there were no such memos.  Those memos show the District's communications with Education Department officials.  In addition, the Defendant did not provide any answers he received from the Education Departments.

(See  EXHIBIT-G, Respondent's "Response to [N. H. Hum. Rights] Commissions 1st Request for Information––Exhibit-A," pages 31 through 34, 43, & 45, dated September 21, 2004, from Edward Lawson.)

-------------------------------------------------------------------------------

38.   **DEFENDANT JANICE LAVOIE'S ANSWERS:**

39.   **OBJECTIONS-2**  Employment records will verify the Defendant's background and experience.

40.   **ANSWER-2**  The Defendant did not sign and provide **authorizations**, as requested, to permit the Plaintiff to obtain her employment records.

41.   **ANSWER-5**  – a –  "Refer to attached teacher complaints" is not an answer!  Attachments may be used to support an answer, but not in place of an answer.  The Defendant did not detail in full, as asked, when she first became involved with complaints about the Plaintiff.

– The Defendant did not say anything about Lois Roland's November 12, 2003, background report referred to in the attachment she authored titled "Sexual Harassment Complaint Form-Title IX – Barbara MacNamee."  In that document the Defendant wrote:

"see report filed by Lois Roland on Nov. 12, 2003 for background information" (See  EXHIBIT-D, "Defendant Lavoie's Answers," [Attachment-5, DEF-0002,

'Sexual Harassment Complaint Form–Title IX––Barbara MacNamee,' first paragraph, – January 9, 2004, by Janice Lavoie], dated March 14, 2007.)

The Defendant's answer contains no details about what Lois's report said, no information about how she knew there was such a report, not if she had read it, discussed it, knew what it contained, directed Lois to write it, or who directed Lois to write it.  She did not even tell who she was directing to "see Lois Roland's report"

– **b** –  The Defendant **did not answer truthfully**.  Her answer states she was not aware of teacher complaints prior to November 12, 2003, yet Principal Bruce Williams stated:

> "During the autumn of school year 2003, some concerns about Mr. Vaughan's work began to surface.  These concerns were communicated informally to Janice Lavoie... over the course of the first 10–12 weeks of the school year by second grade teachers.  Janice Lavoie observed a recess just prior to November 12 at the request of Barbara MacNamee to assess these concerns."
> (See  EXHIBIT–D, "Defendant Ray School's Answers," [Attachment–3, DEF–0022, 'Chronicle of Events,' ¶ A, – January 13, 2004, by Bruce Williams], dated March 14, 2007.)

The Defendant was not only aware of teachers' complaints; she received them.  She also observed the Plaintiff at the request of second grade teacher Barbara MacNamee.

– **c** –  The Defendant's "attachments" do not constitute an answer.  She did not describe in full the conversations she had with teachers who complained to her after November 12, 2003.  Certainly her conversations included more than the conversation snippets she wrote in her attachments.  The conversations should be described in full, even if the description repeats statements recorded in her attachments in order to be complete.

– The Defendant did not detail in full any communications she had with teachers about the Plaintiff's actions that are **not** mentioned in her attachments.  The Defendant did not name the complaining teachers, as requested.  The Defendant failed to describe in full all she knows about each instance of 2nd grade teachers complaining to Principal Williams or Superintendent Greenbaum after November 12, 2003.

- The Defendant did not name others involved in the events that formed the basis of the complaints: no students, no other teachers, no witnesses, nor who was present; even though the sites of the complaints included:  A Sing-a-long, the School playground, Barbara MacNamee's Second Grade classroom, Judy Harvey's Second Grade classroom, Cathy Richardson's Second Grade classroom, and the Ray School lobby.  All these sites were populated by many people at the time of the alleged events.

- The Defendant did not include second grade teacher **Judy Harvey's written complaint** in her attachments.

- **d** - The Defendant did not describe in full, as requested, all she knows about Lois Roland's "concerns."  Referring to attachments is not an answer.  The Defendant stated in her answer:

> "Lois Roland also voiced concerns regarding Mr. Vaughan's actions.  I discussed these concerns with Bruce."

But she did not describe in full what concerns Lois Roland voiced , or the details of her communications with Lois Roland or Bruce Williams.

- She did not describe in full all she knows about Mr. Williams and Ms. Roland's meeting with Mr. Vaughan on November 12, 2003; not even how she knows they met; since she says she was unaware of teacher complaints prior to November 12, 2003, and that she did not attend the November 12th meeting.

- She did not describe in full what she knows about Mr. Williams' conversations with Dr. Greenbaum; not even how she knows they conversed.

42.   **ANSWER-7** - **a** -  The Defendant did not describe in full, as requested, what she learned about Croydon.  She **understood** Superintendent Greenbaum had contacted Croydon, but failed to detail in any way how she came about that understanding.  No word about who told her, when, where, what was said, how many times these matters were discussed, or who else was present during these discussions.

- In a statement she authored at the time, the Defendant wrote:

"Bruce and I discussed this issue, talked with Ken Greenbaum, retraced past work history, met with all second grade teachers."
(See  EXHIBIT-D, "Defendant Lavoie's Answers," [Attachment-5, DEF-0001, 'Sexual Harassment Complaint Form – Title IX – Jane Metcalf,' last paragraph, – January 7, 2004, by Janice Lavoie], dated March 14, 2007.)

but she did not describe **in full** what the conversation was between her and Bruce about this "issue," or when or where the discussion occurred, or who else was present, or any detail about it at all.

– The Defendant did not describe in full what she and Bruce discussed with Ken Greenbaum, or when or where they conversed, or who else was present, or what the outcome of that discussion was (suggestions, advice, actions to be taken, any decisions made, or directives issued) or any detail at all.

– The Defendant did not describe in any detail what she and Bruce did in retracing past work history (of the Plaintiff), what information she considered, where that information came from, who presented it to her or if she gathered it on her own, what she did with it, or who she told about it.  She did not mention who else was present during this retracing endeavor.

– The Defendant did not describe in any detail what she and Bruce and teachers said or did in their meeting with all second grade teachers.  Not only did she provide no detail about the content of the discussion, she said nothing about whether anyone other than the two Defendants and 2nd grade teachers were present, or what resulted from that meeting; nothing about when or where that meeting took place.

43.    **ANSWER-8**  The Defendant did not answer.  She only stated that she wrote the note.  She did not say if Bruce actually said what she attributed to him.

44.    **ANSWER-9  – a –**   The Defendant did not detail her conversation with Jeff Robbins—what she said; what he said.  No word if others were informed, or if anyone else was present when she spoke to him, or if that was her only communication with him.  She states in her answer:

> "There was concern regarding some Ray School students who also participated in the Center's after school program,"

but does not state what concerns, or who had those concerns, or how she came to know them, or if she mentioned them to Jeff, or if Jeff knew of them or mentioned them, and she does not mention which Ray School students.

– **b** – The Defendant did not state which Head Start Program.  Did not name the woman with whom she spoke, or when, or where, or state the manner of contact, or say if anyone else was present.

– The Defendant did not provide **authorization** to permit the Plaintiff to obtain copies of her communications with the Hanover Police, as requested.

45.     **ANSWER–11** – **a** –  The Defendant did not explain fully.  She did not detail what the Boitnotts said; did not explain what their concerns were about the tape, or what they considered "alarming," or why they gave the tape to her, or if giving it to her was their idea or hers, or what they said about matters other than the tape.  She did not detail **what she said** to the Boitnotts.  She did not say if "the Boitnotts" included just the wife and husband or included any of their children.  She did not say **when she spoke to the Boitnotts** and did not say if anyone else joined the discussions.

– **b** – The Defendant did not say **when she listened** to the tape and did not say if anyone was with her in the car as she listened––and, if so, who.

– **d** – The Defendant did not answer, as requested, whether she had any **communications with Ginger and Greg Boitnott on March 4, 2004, or prior to March 4, 2004,** about the Plaintiff or the matters at issue.  She stated she talked to them as she described in part "a" of her answer.  Part "a" includes no indication of when that discussion took place.  In her answer she stated:

> "I did not speak with Greg and Ginger Boitnott regarding the tape other than the communication discussed in subparagraph 'a.'"

Her answer says nothing about whether she communicated with them about **matters other than the tape**, on or before March 4, 2004.

46.   **ANSWER-12  - b -**   The Defendant did not provide complete details, as requested, regarding the calls she received from parents.  She did not explain in detail what was said by all parties who participated in each call.  She did not tell which parents called and when they called.

- d -  The original interrogatory #12 contained five parts ("a" through "e") rather than just four parts ("a" through "d").  The Defendant's response omitted the part "d" question and replaced it with the part "e" question.  The Defendant responded to the original part "e," but not to the original part "d."

- e -  The Defendant did not identify which School District staff and which Ray School family members she spoke with.  She did not state when each conversation or communication took place, or who was present in each case, or disclose  the content of any discussion or communication.

47.   **OBJECTIONS-14**   There is no excessive burden in listing names, as requested.  The Defendant and the School routinely make and maintain lists far more extensive than the one asked for here.  Every person the Defendant should have listed could become a witness; could provide information and testimony.  The Defendants asked the same of the Plaintiff, which shows they know the question should be answered.

- The Federal Rule of Civil Procedure 26(a)(1)(A) requires each party to disclose the name, address, and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims.

48.   **ANSWER-14**   The Defendant failed to list any people--names, addresses, or telephone numbers.  Referring to previous answers is not an answer or a list.

49.   **ANSWER-15**   The Defendant did not provide a list of documents. Referring to documents provided in other answers is not a list of documents.  The Federal Rule of Civil Procedure 26(a)(1)(B) requires each party to disclose copies of all documents and things that are in the possession, custody, or control of the party and that may be used to support its claims.

-----------------------------------------

50.   **OBJECTIONS-A.1**   The copies requested will confirm the Defendant's claim that she has earned her credentials.

51.   **DOCUMENTS-A.1**   No Certificates, Licenses, or Degrees were provided.

52.   **DOCUMENTS-A.2**   **– a –**   The document titled: "Sexual Harassment Complaint Form – Barbara MacNamee" that Defendant Lavoie and the other Defendants provided still has some lines at the bottom that are cut off and not readable––the document that reads: "Sexual Harassment Complaint Form – Title IX –– Barbara MacNamee," dated **January 9,** 2004, and **signed by Janice Lavoie.**

**– b –**   Also, the document titled: "Sexual Harassment Complaint Form – Jane Metcalf" that this and the other Defendants provided has lines at the bottom that are cut off and not readable––the document that reads: "Sexual Harassment Complaint Form – Title IX –– Jane Metcalf," dated **January 7,** 2004, and **signed by Janice Lavoie.**

(**See** EXHIBIT–D, "Defendant Lavoie's Answers," Attachment–5, DEF–0001/0002, dated March 14, 2007.)

– Complete readable copies of these documents were not provided, as requested.

53.   **DOCUMENTS-A.3**   The Defendant did not name any of the "parents" who called her about the March 10, 2004, "Notice" the School sent to parents.

--------------------------------------------------------------------------------

54.   **DEFENDANT BRUCE WILLIAMS' ANSWERS:**

55.   **OBJECTIONS-2**   Employment records will verify Mr. Williams' background and experience.

56.   **ANSWER-2**   The Defendant did not provide authorizations to allow the Plaintiff to obtain his employment records.

57.   **ANSWER-5   - a -**   "Please see attached documents" is not an answer! None of the Defendant's attachments were written by the Defendant; that too rules out the attachments as an answer.

- The Defendant did not describe in full the second grade teachers' complaints.  He discusses only one teacher, Judy Harvey, and then only vaguely.  He and the other Defendants attached written complaints from only three second-grade teachers.  The complaint written by Judy Harvey was not included, even though the Defendants previously stated the complaints came from four teachers:

> "The Defendants admit that the complaints came primarily from four second-grade teachers."
> (See EXHIBIT-A, Defendants' "Answer to Complaint," ¶8 'Just resign,' second paragraph, page 2, dated January 20, 2006.)

- The Defendant's answer is **not true**.  The events he describes never happened and have never been mentioned before by this Defendant or anyone.  Judy Harvey's written complaint was presented by the Defendants to the Plaintiff and his attorney at the time, on January 26, 2004.  The Defendants provided it again to the Plaintiff and the N. H. Human Rights Commission in September, 2004.

(See EXHIBIT-G, Respondent's "Response to [N. H. Hum. Rights] Commissions 1st Request for Information--Exhibit-A," page 26, ['To whom it may concern' - January 26, 2004, by Judy Harvey], dated September 21, 2004, from Edward Lawson.)

- The Defendant's answer to Interrogatory-5 stated:

> "In addition, Judy Harvey had previously expressed some concerns about how inflexible Mr. Vaughan was with certain children."

but gave almost no details.  It did not say what constituted **inflexible**, or when Judy

expressed her **concerns**, or what they were, or what Judy said to the Defendant or what he said to Judy. It did not say how Judy's concerns were "expressed" or even if she expressed them to Mr. Williams. It did not say if she told the Plaintiff about her concerns when they happened or when she told somebody(?) about them.

– **b** – The Defendant did not **detail** how **each complaint** was dealt with. He only referred to a single claim made by teacher Judy Harvey in the Spring of 2003. The Defendant failed to describe the many actions taken by the Defendants in dealing with **each** complaint. He failed to mention anything about the "counseling" meeting he held with the Plaintiff on November 12, 2003. He omitted mention of his written Notice to Parents; his involvement with the education aide, Jennifer Congdon; the communications carried on with parents and Ray School staff regarding the Plaintiff's dismissal; the Superintendent's communications with the Plaintiff's previous employers; and the New Hampshire and Vermont Departments of Education.

– The Defendant did not detail the several claims he made against the Plaintiff, which he added when responding to the Human Rights Commission. His claim that it was wrong for the Plaintiff to deal with students after school hours, or to deal with students in the After School Program (HASP), or to remain at school after students were dismissed, or the Plaintiff's interference with the After School Program (HASP) and with the "Sing–a–long" assembly, or the tape of songs the Plaintiff gave to parents of a student off School grounds after School hours, or that the Plaintiff corresponded with Ray School employees. The Defendant also failed to mention his own involvement with the Hanover Police.

(See EXHIBIT–F, Respondent's "Response to Complaint," [N. H. Hum. Rights Comm.], dated August 6, 2004, from Bruce Williams; See also EXHIBIT–G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information," dated September 21, 2004, from Edward Lawson.)

58.    **ANSWER–6** – **a** – "Please see attached documents" is not an answer! In addition, the attachments were not written by the Defendant; so can not be his answer.

Furthermore, this question asked about people other than the teachers whose statements were attached. The Defendant ignored the question completely.

– **b** – The Defendant did not describe in detail how each complaint was dealt with; did not detail the November 12, 2003, meeting that he did mention; did not state who attended that meeting, or even if he attended. The attached documents give no detail of that meeting, they were all written two months **after** that meeting, and referred mostly to events that occurred **after** November 12, 2003. They have nothing to do with what brought on the meeting of November 12.

– In other answers the Defendants admit that Teacher's Aide Jennifer Congdon, Parents Ginger and Greg Boitnott, Lisa Weiss, and Laura Scanlan.Beliveau all communicated with them about the Plaintiff's dismissal, yet Mr. Williams provided no information about any of these people in this answer. He also ignored his involvement with the Hanover Police and Jennifer Congdon.

(See EXHIBIT–F, Respondent's "Response to Complaint," [N. H. Hum. Rights Comm.], dated August 6, 2004, from Bruce Williams; See also EXHIBIT–G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information––Exhibit–A," [[page 29 'Dear Parents, March 10, 2004,' page 30 'Letter from Jennifer Congdon, March 17, 2004,' page 49 'List of songs, no date,' pages 50+51 'E-mails from parents, March 11+13, 2004']], dated September 21, 2004, from Edward Lawson.)

59.    **ANSWER-7** – **a** – The Defendant's answer ignores completely the complaints that led to the Plaintiff's dismissal. Certainly he and the Defendants received complaints during the fall of 2003 that led up to the "counseling" meeting of November 12, 2003, or there would have been no need for the meeting. Instead, the answer refers to some "concerns" expressed in the previous school year. Concerns that the Defendant admits were "worked through" in a "satisfactory manner." His answer omits the complaints at issue, which arose in the Plaintiff's second year.

– In addition, the Defendant's story here is completely made up. There were no such communications between the Defendant and the Plaintiff in the Spring of 2003 and the Defendants have never before mentioned this story or offered evidence of it. Only now,

.. 21 ..

**three years after** the Plaintiff's dismissal, does Mr. Williams put forth this story.

– c – The Defendant's answer is **false**. His attached statements show that Cathy Richardson filed her complaint on January 13, 2004, prior to the suspension meeting with the Plaintiff on January 13, 2004. The three attached complaints are those of Cathy Richardson, Barbara MacNamee, and Jane Metcalf. There is no complaint from Judy Harvey. Also, in one of the Defendant's attachments Janice Lavoie reveals that Cathy Richardson already knew about "concerns" regarding the Plaintiff one week prior to January 13, on January 7. Indeed, Cathy sent Jane to see Janice, precisely because Cathy already knew.  Janice wrote:

> "Jane came to me around noon on January 7, after voicing her concerns to Cathy Richardson, another second grade teacher.  Cathy, knowing there were previous concerns, told Jane to come directly to me."
> (See EXHIBIT–D, "Defendant Williams' Answers," [Attachment–5, DEF–0007, 'Sexual Harassment Complaint Form–Title IX––Jane Metcalf,' first paragraph, – January 7, 2004, by Janice Lavoie], dated March 14, 2007;  See also EXHIBIT–F, Respondent's "Response to Complaint," [N. H. Hum. Rights Comm.], dated August 6, 2004, from Bruce Williams;  See also EXHIBIT–G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information," dated September 21, 2004, from Edward Lawson.)

60.   **ANSWER–8**   The Defendant failed to specify any activities, as requested.

61.   **ANSWER–9  – b –**   The Defendant did not explain what was problematic about "each stark image in each story he read."  He did not refer to any story specifically, as asked.  The Plaintiff provided several stories to the Defendants in his answers to their interrogatories.  The Defendant could have reviewed them to determine which stories he had read and which images he found problematic.

– c –  The Defendant did not describe in full how he obtained each story, or tell how many stories he read, or tell "when" Judy provided the stories.

62.   **ANSWER–10**   The Defendant did not describe the sleep–over, as asked. He gave no account of what went on during the sleep–over in 2004/05, nor what goes on in them generally.  He did not detail the setting or clothing worn by the participants.

He could easily have learned from his records or the third grade teacher when that 2004/05 sleep–over was held; right to the day.  He could have determined the names of students who attended  by consulting the class roster for 2004/05.  The sleep–overs are provided to only that teacher's students.  A similar effort would have revealed which other staff attended, which parents attended, and which volunteers attended.  Certainly, he knows the name of the teacher's educational assistant for 2004/05 that he states attended.  He knows if he attended, or School administrators, or Defendant Kenneth Greenbaum.

63.    **OBJECTIONS-11**  The question is not overly burdensome.  It asks about specific offenses––offenses which occur very rarely if at all.  The Defendant is using this objection to avoid answering the question.  It is relevant to the discrimination charge, since the Plaintiff was reprimanded for each action listed.

(See  EXHIBIT-F, Respondent's "Response to Complaint,"   [N. H. Hum. Rights Comm.], dated August 6, 2004, from Bruce Williams;  See also  EXHIBIT-G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information," dated September 21, 2004, from Edward Lawson.)

– Personnel matters are legitimate to ask for in interrogatories leading up to a Court case.  This is not merely a member of the public asking.  During the N. H. Human Rights investigation the Defendants provided the Commission and the Plaintiff with names and details of the staff members the Defendant refers to in his answer, without objecting.  Even if this were a legitimate objection, it does not absolve the Defendant from providing any answer at all.  As a minimum he could have provided numbers; such as, "there have been three cases of discipline for staying after school during my tenure as Principal."

64.    **ANSWER-11**  The Defendant provided a dishonest answer.  The "three staff members" counseled during the 2003-04 school year were not counseled for any of the behaviors asked about in the question.

65.   **ANSWER-13**  **– b –**   The Defendant did not "detail" the communications he had with Ken Greenbaum regarding the Plaintiff's work at Croydon.

**– c –**   The Defendant's answer is **false**.   In the "Meeting Notes" he attached, Janice Lavoie quotes the Defendant:

> "Bruce told Jack that because of the most recent concerns, he has consulted with the Superintendent, who in turn called Croydon School District and found that Jack was released from his position because of boundary issues with students."

But in his answer the Defendant states he does not recall the term "boundary issues" being used.   Also, his answer does not tell if some similar reason was given for the Plaintiff's dismissal from Croydon.

**–** The Defendant did not "verify" as asked if Superintendent Greenbaum told him he called Croydon or if Superintendent Greenbaum told him the Plaintiff was released from his position at Croydon.

**– d –**   The Defendant's answer here is also **false**.   In the same "Meeting Notes" Assistant Principal Lavoie writes:

> "Bruce said that given our concerns and the fact that Jack was released from another school district because of boundary issue concerns, we felt it was in the best interest of the students, (and Jack) to ask for his resignation."
> (See EXHIBIT-D, "Defendant Williams' Answers," [Attachment-5, DEF-0012, 'Meeting Notes...' second paragraph, – January 13, 2004, by Janice Lavoie], dated March 14, 2007.)

66.   **ANSWER-14**  **– a –**   The Defendant did not detail how he came to know of the tape of songs.   "I was made aware of the tape by Ms. Lavoie" is an answer with no details.   The Defendants provided no documents about the tape of songs even though they wrote statements about this matter to the N. H. Human Rights Commission.   In fact, the Plaintiff only learned of this matter from those statements.

(See EXHIBIT-F, Respondent's "Response to Complaint," [N. H. Hum. Rights Comm.], dated August 6, 2004, from Bruce Williams;  See also EXHIBIT-G, "Response to [N. H. Hum. Rights] Commissions 1st Request for Information from Respondent," page 49, dated September 21, 2004, from Edward Lawson.)

– **b** – The Defendant did not describe how he came to know that Ms. Lavoie listened to the tape and did not describe any communications between himself and Ms. Lavoie about it.

67.   **ANSWER-15**  – **b** –  The Defendant did not describe in full, as requested, his involvement in the matter of the letter, nor did he describe completely the communications between himself, Jennifer Congdon, and the Hanover Police at the time.  "Expressing concern" does not describe the Defendant's conversations with Jennifer.  It does not even reveal what her concerns were.  The Defendant answered that "her husband was upset," but did not identify even who her husband is, any details of the conversation with him, or what the husband did to convey his state of upsettedness.

– The Defendant did not provide documents of this issue, even though Jennifer composed and sent a reply to the Plaintiff by registered mail in which she stated the Defendant was involved with her and the Police regarding this matter.  Her reply also stated she provided copies of her reply to both the Defendant and Hanover Police Officer Schlosser.  In his answer the Defendant did not even acknowledge Jennifer had written a reply.  The Defendants offered many statements to the Human Rights Commission regarding this matter.  Mr. Williams provided none of those statements.

(See EXHIBIT-F, Respondent's "Response to Complaint," [N. H. Hum. Rights Comm.], dated August 6, 2004, from Bruce Williams;  See also  EXHIBIT-G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information," dated September 21, 2004, from Edward Lawson.)

– The Defendant did not detail what prompted him to call the police.  Writing a letter is not a police matter.  The Defendant admits in part "a" that he was unaware at the time of the contents of the Plaintiff's letter to Jennifer Congdon.

– The Defendant did not tell how  the other Defendants learned about this matter.

– **c** – The question asked the Defendant to **detail** how  it was Jennifer wanted the letter turned over to the Police.  The Defendant answered only that he and Jennifer agreed to

turn the letter over.  He did not detail her reasons or his conversation with her.

– **d** –  The Defendant admitted he "explained" to the police officer that "Ms. Congdon and her husband "expressed concern," but he failed to detail that explanation.

– The Defendant stated he did not recall the name of the Police officer, even though, Jennifer's reply states an officer Schlosser received a copy of that reply.

– **e** –  The Defendant's response to part "e" is **not true**.  He does know if officer Schlosser was the officer he gave the Plaintiff's letter to.

– **g** –  The Defendant's answer is **not true**.  He knows much more about this matter than what he stated in parts "a" through "f" of his answer.

– The Defendant refused, as requested, to authorize the Hanover Police to release information regarding his involvement with them about this matter.

     68.    **ANSWER-16**  – **d** –  The Defendant did not tell if he communicated with any family or non–Flood Brook School individual from the Londonderry, Vermont, area, as asked.

     69.    **ANSWER-18**  The Defendant did not detail what Janice (or someone) told him about Janice's communications with Dartmouth Child Care.  He did not answer the question in full.  He was asked for the School's "communications" with other organizations, not merely those communications that he or Janice Lavoie **initiated**.

     70.    **OBJECTIONS-19**  This implies there are many people connected to the matters at issue in this suit; too many to list, yet the Defendant lists none.  It is necessary to establish all those involved in order to consult with and perhaps ask for testimony from these people.  In addition, the too burdensome objection does not allow the Defendant to provide no names at all.  It is absurd to contend that revealing the names of those involved will not lead to any admissible evidence.  The Defendants asked the same question of the Plaintiff.

(See EXHIBIT–B, Defendants' "Interrogatories and Documents Requests to Plaintiff,"
Interrogatories: 2 & 23, pages 4 & 10, dated April 11, 2006.)

This is likely to lead to admissible evidence since all those named in previous answers were participants in events.  Certainly, anyone the Defendant talked to about these matters could have admissible information or evidence.  Then there are those he did not talk to, but thinks may have information about these matters (previous employers for example).  Indeed, any number of people may become known to the Plaintiff only if Mr. Williams identifies them.

– The Federal Rule of Civil Procedure 26(1)(a)(A) requires all parties to provided names, addresses, and telephone numbers of people likely to have information regarding events at issue in the case.

71.   **ANSWER–19**   The Defendant failed to provide addresses & telephone numbers of those he named in his answers (even of the complaining teachers).  He failed to provide a single name or information, about anyone he did not name in his answers who may have knowledge about the matters at issue.  People such as: Lois Roland, Ray School aides, other Superintendency staff, School board members, the School's previous lawyer, Edward Lawson, or the Human Rights investigator Randall Fritz.

72.   **ANSWER–20**   "See prior interrogatories" is not a list and not an answer to this interrogatory.  In addition, the documents attached do not include many documents such as: the Defendants' response to the N. H. Human Rights Commission dated August 6, 2004, referred to in his Answer–8; the "Chronicle of events" dated January 13, 2004, referred to in his Answer–9; Judy Harvey's complaint dated January 26, 2004, that the Defendant presented to the Plaintiff on January 26, 2004; copies of the stories written by the Plaintiff Mr. Williams read; Sheila McCoy's parental notice about her 2004/05 in–school sleep–over; and memos describing the discipline of staff members mentioned in Answer–11.

– The Defendant failed to list any documents that he did not refer to, but used in answering these interrogatories. Jennifer Congdon's reply letter to the Plaintiff dated March 17, 2004, is one example of a pertinent document not referred to.

– The Federal Rule of Civil Procedure 26(1)(a)(B) requires all parties to provide all documents likely to support their positions.

---------------------------------------------

73.   **OBJECTIONS–P.1**   It is a simple task for the Defendant to confirm his credentials by providing copies of them, just as he does when applying for jobs.

74.   **DOCUMENTS–P.1**   The Defendant provided none of his Certificates, Licenses, or Degrees.

75.   **DOCUMENTS–P.2**   The Defendant did not provide a copy of Judy Harvey's written Complaint about the Plaintiff dated January 26, 2004.

76.   **OBJECTIONS–P.3**   This request does not ask the Defendant to provide legal research, rather it seeks to establish what wording of law he was referring to and relying on specifically; not what the Title–IX law is as recorded in some law repository. What he used was likely small elements of Title–IX law.   The Plaintiff is entitled to know what elements of the law he used.   Also, Title–IX is an incomplete reference.   There are many Title–IXs in the law.

77.   **DOCUMENTS–P.4**   No names were provided of those present at the March, 2004, faculty meeting.

78.   **DOCUMENTS–P.7**   – a –   The Defendant did not provide Jennifer Congdon's reply to the Plaintiff dated March 17, 2004.

– **b** –   Jennifer's reply letter also mentions Police involvement.   The Plaintiff was given a copy of Jennifer's written reply to the Plaintiff dated March 17, 2004; so the Defendant could have provided it.

79. **DOCUMENTS-P.8**  The Defendant failed to provide any of the documents requested.  He has, at least, Jennifer Congdon's reply letter of March 17, 2004.

80. **DOCUMENTS-P.11**  The Defendants corresponded with two state Education Departments about the Plaintiff, but provided no copies of any of those correspondences.

------------------------------------------------------------------------

81. **DEFENDANT BERNICE A RAY SCHOOL'S ANSWERS:**

82. **ANSWER-1**  No information was provided for the Hanover School District, the Dresden School District, or the Norwich School District.

83. **OBJECTIONS-2**  The Defendant can answer.  The School is obliged to know and obey the law governing School matters and the handling of employees.

84. **ANSWER-3**  The answer given is **not true**.  The Plaintiff was sitting right outside Principal William's office and saw Superintendent Greenbaum and others leave the Principal's office at 2:10 pm on November 12, 2003.

85. **ANSWER-4**  **– a –**  The Defendant did not provide a **detailed** account of what led up to **each** complaint listed.  The answer confirms that **teachers and educational assistants** complained.  The "Chronicle of Events" attached confirms that people raised concerns during the first 10–12 weeks of the school year prior to November 12, 2003.  The answer and attachments provide no details, however, as requested, about what led up to each complaint.  Only teacher Barbara MacNamee is mentioned, and only that she expressed "concerns" and asked Janice Lavoie to "observe" the Plaintiff.  In addition, the concerns listed are not specific about which teacher, aide, or administrator was involved in each one.

> "During the autumn of school year 2003, some concerns about Mr. Vaughan's work began to surface.  These concerns were communicated informally to Janice Lavoie, Lois Roland, and me over the course of the first 10–12 weeks of the school year by second grade teachers.  Janice Lavoie observed a recess just prior to November 12 at the request of Barbara MacNamee to assess these concerns."  (See  EXHIBIT-D, "Defendant Ray School's Answers," [Attachment-3,

DEF-0022, 'Chronicle of Events,' ¶ A, – January 13, 2004, by Bruce Williams], dated March 14, 2007.)

– c – This answer is **not true**. Defendant's exhibits show Janice Lavoie referred to Lois Roland's "filed report." Janice wrote:

"see report filed by Lois Roland on Nov. 12, 2003 for background information" (<u>See</u> EXHIBIT–D, "Defendant Ray School's Answers," [Attachment–4, DEF–0014, 'Sexual Harassment Complaint Form–Title IX––Barbara MacNamee,' first paragraph, – January 9, 2004, by Janice Lavoie], dated March 14, 2007.)

Lois Roland wrote and **filed a report**. The Defendant should know where it is. The School is obligated to preserve records. Lois Roland was a School counselor, and responsible for preserving sensitive records. She was also the Title–IX coordinator; making her responsible for additional records. Since the complaints against the Plaintiff were made as Title–IX complaints, Lois and the School are fully responsible for preserving all records of those complaints and subsequent inquiry. The Principal confirmed that Lois Roland was the Title–IX coordinator, and that the November 12, 2003, meeting with the Plaintiff was a Title–IX action.

"...Lois Roland (Title IX coordinator for the building)"          – and – "...to help Mr. Vaughan find ways to establish appropriate boundaries with children. It was made clear that under Title IX guidelines, appropriate adjustments in behavior must be made..." (<u>See</u> EXHIBIT–D, "Defendant Ray School's Answers," [Attachment–3, DEF–0022, 'Chronicle of Events,' ¶ A + B, – January 13, 2004, by Bruce Williams], dated March 14, 2007.)

In addition, the Principal stated there were "documented records" of the November 12, 2003, meeting, and of the meeting on January 13, 2004.

"These concerns are documented in records of meetings held with Mr. Vaughan on November 12, 2003 and January 13, 2004." (<u>See</u> EXHIBIT–D, "Defendant Ray School's Answers," [Attachment–3, DEF–0023, 'Chronicle of Events,' ¶ F, – January 13, 2004, by Bruce Williams], dated March 14, 2007.)

Part "c" of the interrogatory asked for what was written. The **disappearance** of the report does not absolve the Defendant from disclosing its contents.

– d – Part "d" was not answered.  No description of the meeting with second

grade teachers was offered, and the attachments provide no details of it.

86.   **ANSWER-5**  – a –   Referring to attachments is not an answer.  In

addition, Teacher Judy Harvey's complaint of January 26, 2004, was not provided.

– b – Defendant's answer is **not true**.  There were prior discussions.

> "I went to see Janice Lavoie after seeing something that really disturbed me.
> I became more concerned, based on what I observed, for the safety of two of my
> female students.  I had previously spoken with Janice about my concerns."
> (See EXHIBIT–D, "Defendant Ray School's Answers," [Attachment–4, DEF–0016,
> 'Sexual Harassment Complaint Form–Title IX,' first paragraph, – January 9, 2004,
> by Barbara MacNamee], dated March 14, 2007.)

Barbara MacNamee spoke with Ms. Lavoie before reporting to her on January 9th.

– c – The Defendant's answer is **not true**.  Certainly, second grade teachers were

informed of what others were complaining about, if so many of them were "concerned."

Barbara MacNamee stated she knew the Plaintiff had been "counseled" on November 12,

2003, even though she was not at that counseling meeting.  Someone told her about it.

Teacher Barbara MacNamee wrote:

> "In November, about a week after Lois and Bruce had spoken with Jack, I observed
> on the playground that he was still holding hands with two girls in my class..."
> (See EXHIBIT–D, "Defendant Ray School's Answers," [Attachment–4, DEF–0016,
> 'Sexual Harassment Complaint Form–Title IX,' third paragraph, – January 9, 2004,
> by Barbara MacNamee], dated March 14, 2007.)

Barbara was referring to the counseling meeting of November 12, 2003.  Also, the

Principals admit they met with **all** second grade teachers on January 7, 2004, which is

before some of the final complaints were made.  The Defendant failed to name any of

the teachers who were told of the complaints made by others, or who told them of

those complaints.

(See EXHIBIT–D, "Defendant Ray School's Answers," [Attachment–4, DEF–0013, 'Sexual
Harassment Complaint Form–Title IX––Jane Metcalf,' last paragraph, – January 7, 2004,
by Janice Lavoie], dated March 14, 2007.)

**- d -** The Defendant did not answer completely. Judy Harvey may have raised concerns prior to November 12, 2003, but at least one other teacher, Barbara MacNamee, did also. Principal Williams wrote at the time:

> "During the autumn of school year 2003, some concerns about Mr. Vaughan's work began to surface. These concerns were communicated informally to Janice Lavoie, Lois Roland, and me over the course of the first 10–12 weeks of the school year by second grade teachers. Janice Lavoie observed a recess just prior to November 12 at the request of Barbara MacNamee to assess these concerns." (See  EXHIBIT–D, "Defendant Ray School's Answers," [Attachment–3, DEF–0022, 'Chronicle of Events,' ¶ A, – January 13, 2004, by Bruce Williams], dated March 14, 2007.)

Principal Williams' statement confirms Barbara MacNamee mentioned her concerns to Defendant Janice Lavoie, before November 12, 2003; two months prior to her written complaint of January 9, 2004. The Defendant's answer states that Judy Harvey raised concerns with the "Defendants," but fails to name which Defendants.

**- e -** It is not credible that teachers who had been complaining all year were given no suggestions or directives even after the "counseling" of the Plaintiff in November, 2003, or that non complaining second grade teachers were issued no suggestions or directives. Please note, Teacher Cathy Richardson confirms she already knew the Plaintiff had been told by the Principals not to tape-record students anymore.

> "Jack brought in his tape recorder to school today to tape a child at recess. I was told by Janice that Jack was told in November not to tape record children at recess, or at any other time." (See  EXHIBIT–D, "Defendant Ray School's Answers," [Attachment–4, DEF–0017, 'Sexual Harassment Complaint Form–Title IX,' last paragraph, – January 13, 2004, by Cathy Richardson], dated March 14, 2007.)

87.    **OBJECTIONS-6**  As a party in this lawsuit the Plaintiff is entitled to documents and things that are relevant to the issues of the case. The videos contain evidence of staff actions and statements that apply directly to the accusations against the Plaintiff. They show the kinds of student conduct and speech the School permits.

88.    **ANSWER-7  - a -**  The Defendant's answer is a **lie**. The School provided notes to the Plaintiff and the NH Human Rights Commission naming the people listed in

the question--that's how the Plaintiff came to know about those people.

(See EXHIBIT-G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information--Exhibit-A," pages 34, 42, 43, 45, & 46, dated September 21, 2004, from Edward Lawson.)

– b – The answer states Superintendent Greenbaum contacted an official with the Croydon School and learned the Plaintiff had been dismissed because of "boundary issues," but provides no details.

– c – The Defendant provided no details, as requested, of Ms. Lavoie's conversation with the Dartmouth Child Care Center mentioned in the answer.

    89.   **ANSWER-9**   The Defendant provided almost no details of the conversations between Barbara MacNamee and the Boitnotts and Weindlings, including what "harm" Mr. Williams and Ms. MacNamee discussed.

    90.   **ANSWER-10   – a –**   The Defendant did not describe the conversation between Ms. Lavoie and the Boitnotts nor the time and date of the conversation.

– c– This answer says nothing regarding contacts with the Boitnotts about matters **other than** the tape.

    91.   **ANSWER-11**   The Defendant's answer neither tells the date the Boitnotts brought the tape to School nor anything about contact with the Boitnotts **prior** to March 4, 2004.  It does not detail any conversations.

    92.   **ANSWER-12   – b –**   The Defendant failed to name parents who received the "Notice," as asked.  The Defendant notified second grade teachers and aides, but did not name them.  The the staff was notified in a "faculty meeting," but faculty meetings do not include all staff.  Staff members notified were not named.

– c – The Defendant did not name Board members who were notified in advance.

– d – No response was given about who notified the staff in the faculty meeting. What the staff was told was not described in full, as requested.

93.   **ANSWER-13**  – a –  "Attached e.mails" offer no details of the School's responses, as requested.

– **b** –  The answer does not include details of the communications with the
Dartmouth Child Care, the Lebanon Library, the Howe Library, or the parents
who voiced "concerns" about book readings.  Plus, no names of parents, or of
those responding to the parents are given.  No dates are mentioned.

94.   **ANSWER-14**  The answer is **false**.  The two teachers showed up for the
dismissal meeting; so someone talked to them at least about attending.

95.   **OBJECTIONS-15**  The objections indicate a great deal of communication
is involved, but the answer refers to only two letters.  The Defendants provided the
notes to the N. H. Human Rights Commission and to the Plaintiff.  The question is
limited to just the people listed between August 2003 and the present.  These notes
refer to people contacted about the Plaintiff's prior employment, which is relevant.  The
answer confirms the Defendants communicated with Ed. Depts., which is also relevant.

96.   **ANSWER-15**  – a –  The answer does not provide a detailed account of
all communications between each person named and Individual Defendants.  The two
letters mentioned were not provided in response to these interrogatories.

– **b** –  This question was ignored in the answer given.

97.   **ANSWER-16**  – a –  No detail was provided about communication
between Jennifer and her Husband and Janice Lavoie, or between Janice Lavoie and
Bruce Williams, or between Bruce Williams and the Police.

98.   The last paragraph of Interrogatory-16 asked for **authorization** for the
Plaintiff to receive Police records.  No authorization was provided.

99.   **OBJECTIONS-19**  The objections imply there is a great deal of
information regarding the music teacher, but the answer states there are no records.
The question asks about disciplinary actions against only one teacher from August

2003 to the present.  The question is relevant.  It addresses the matter of discrimination.

100.  **ANSWER-19**  The answer given is vague and does not state if the teacher was disciplined.   It also does not detail any communications that were not recorded.

101.  **OBJECTIONS-20**  This objection implies a great deal of communications went on; too many to relate, but the answer states there were no communications. Limits need not be stated.  Communications between previous and current attorneys (2) and anyone regarding the Plaintiff and the matters at issue obviously date from when these matters first arose.  Anything a potential witness says is relevant.  There is no attorney/client privilege between attorneys and non-clients.

102.  **OBJECTIONS-22**  The Defendant is required to provide names, addresses, and telephone numbers of those involved in these matters.

103.  **ANSWER-22**  The answer is **false**.  The School has more names, as well as addresses and telephone numbers of the people it could list.

104.  **OBJECTIONS-23**  The Defendant is required to list the documents provided and used.

105.  **ANSWER-23**  The answer is **false**.  The Defendant did provide documents and referred to others it did not provide, but listed none.

-------------------------------------------

106.  **DOCUMENTS-D.1**  The answer is **false**.  Lois did write a report.  The report mentioned by Janice Lavoie in the exhibit referred to in the question.

(See EXHIBIT-D, "Defendant Ray School's Answers," Answer-4c; and [Attachment-4, DEF-0014, 'Sexual Harassment Complaint Form-Title IX--Barbara MacNamee,' first paragraph, - January 9, 2004, by Janice Lavoie; and Attachment-3, DEF-0023, 'Chronicle of Events,' ¶ F, - January 13, 2004, by Bruce Williams], dated March 14, 2007.)

107.  **DOCUMENTS-D.2**  "Attached documents" do not include records of the meeting with teachers.

108.  **OBJECTIONS-D.3**   This objection indicates a great many records of meetings exist--too many to supply--but the documents provided comprise only 3 pages and discuss only 1 meeting (January 13, 2004, with the Plaintiff.) The Plaintiff is entitled to all records of meetings regarding the matters at issue, no matter how many. The request is limited to meetings held regarding the Plaintiff and matters at issue from August 2002 to the present.  These records are relevant. They refer to people, events, acts, and statements about matters at issue in this lawsuit.

109.  **DOCUMENTS-D.3**   Some documents requested were not supplied, such as Defendants' conversations with the Hanover Board.

(See  EXHIBIT-D, "Defendant Ray School's Answers," Answer-8, dated March 14, 2007.)

110.  **DOCUMENTS-D.4**   The response is **not true**.  At least two e.mails exist and were provided.   Other documents such as the "Notice to Parents" were referred to but not provided.

111.  **OBJECTIONS-D.7**   This objection implies that many videos exist; too many to provide, but the answer states no videos requested exist.  The answer is **false**. The request need not be limited in scope or time any more than it is.  The videos requested are identified both by subject and date.  The videos capture many issues, actions, statements, and information critical to this suit--especially regarding discrimination

112.  **DOCUMENTS-D.7**   The Plaintiff is entitled to these videos.  The court may take steps if necessary to protect them from public scrutiny.

113.  **DOCUMENTS-D.8**          **DOCUMENTS-D.9**

　　　　**DOCUMENTS-D.10**          **DOCUMENTS-D.11**

The responses to these requests are **not true**.  The September 21, 2004, School submission to the N. H. Human Rights Commission included "school memos" bearing most of the names listed in Document Requests 8, 9,10 & 11.

(<u>See</u> EXHIBIT-G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information--Exhibit-A," pages 33, 34, and 42 through 46, dated September 21, 2004, from Edward Lawson.)

114. **DOCUMENTS-D.13**  - a -  "None" is a **false** response.  The handwritten **list of songs** on the tape the Boitnotts brought to the School that the Defendants submitted to the NH Human Rights Commission was not provided.  The **"Notice to Parents"** sent to the Boitnotts + Weindlings was not provided.

- b -  The **tape of songs** was not provided.  The Defendant admits in Answer-10 that Janice Lavoie received the tape of songs and listened to it.

115. **OBJECTIONS-D.14**  The response implies the Notice was sent to many people; too many to list, yet the answer states the Notice was sent only to families of second-graders.  Listing the names of 100 second grade students and their parents is not burdensome.  The School has those names, not only for second grade, but for all six grades.  Each person who received a notice implying the Plaintiff was dangerous could constitute evidence of defamation.

116. **DOCUMENTS-D.14**  "All 2nd grade parents" does not satisfy the request.  Each parent and student should have been listed.  The response gives no indication which second grade was sent the Notice--1st year, 2nd year, or some other year.  Also, the answer is **not true**.  Lisa Weiss, a parent of 1st + 3rd grade daughters received the notice.

(<u>See</u> EXHIBIT-D, "Defendant Ray School's Answers," [Attachment-13, DEF-0019, "E-mail," – March 13, 2004, from Lisa Torrey Weiss], dated March 14, 2007.)

No names were provided of parents and students not from the second grade.  No names were provided of School District officials, or District employees outside of Ray School, or Dresden or Hanover Board Members, or Employees of the Police or Town, or of anyone else who was sent or given the Notice.

117. **DOCUMENTS-D.15**  - a -  The attached e-mails do not include replies to the parents.

**– b –**  The Defendant did not respond to part "b."

118.  **DOCUMENTS–D.16**  **– a –** The Defendant's response is **false**.  Jennifer Congdon's reply to the Plaintiff was copied to Principal Williams, but was not provided.

**– b –**  The Defendant refused to execute an authorization granting permission for the Plaintiff to receive records from the Hanover Police.

119.  **OBJECTIONS–D.20**          **OBJECTIONS–D.21**

Attorney/client privilege does not apply to attorney and witness.

120.  **DOCUMENTS–D.23**  The Plaintiff's request was copied incompletely by the Defendant.  Only three words of section "a" were copied.  The actual request read:

> "Provide written rules that existed in 2002/03 + 2003/04 that:
> a. – Prohibit staff from staying at school after duty hours
> b. – Prohibit staff from talking with students after school
> c. – Prohibit staff from talking with HASP students after school"

121.  **OBJECTIONS–D.24**  The objection implies many records exist of staff members participating in the activities listed; too many to supply, but the answer states the school keeps no records.  The answer is **not true**.  The document request is limited to just two years and specifies a limited group of activities.  The information addresses the legitimacy of staff dealing with students after school, which the Plaintiff was condemned for doing.  The Defendants asked for similar kinds of records from the Plaintiff.

(See EXHIBIT–B, Defendants' "Interrogatories and Documents Requests to Plaintiff," Document requests– 11, 14, 15, 21, 22, 24, 25, 26, pages 12+13, dated April 11, 2006)

122.  **DOCUMENTS–D.24**  The School could provide names––a list.

**– c –**  Certainly the School knows which staff provided XC–ski instruction to students at the Golf Course.

**– f + g –**  Bulletins announcing after-school activities for students were common and should have been provided.

– **h** – The School knows which staff members provided supervision for the school dances and knows the dates of the dances.  They are School sponsored.

– **i** – School Bulletins often mentioned the early morning "walking" program for students, led by the Physical Education Teachers.

– **j** – Judy Harvey conducted nature walks after school that were sanctioned by the School.  The School knows her schedule and the volunteers who joined her.

– **k** – Other teacher/staff members provided activities for students after school at the School or in the Hanover area––there was a Chess Club, and the School admits Teacher Sheila McCoy offered a sleep–over at the School.

123.   **DOCUMENTS–D.25**   The Defendant provided only one STOP booklet.  The request was for two.  The Ray Handbook 7/2003 provided has pages 3 and 4 missing, and the Ray Handbook 7/2004 has no "Parents Right to Know" page – page 9.  The Educational Assistant's Handbook is for 2006 rather than for years 2002/03 and 2003/04, as requested.

124.   **OBJECTIONS–D.26**   The objection implies that many policies exist; too many to supply, yet the Defendants supplied only 3 different manuals the "STOP booklet," the "Ray School Handbook," and the "Educational Assistant's Handbook."  The request is limited to written policies for Ray staff for the years 2002/03 + 2003/04.  The Defendants claim the Plaintiff violated policy; certainly School policy is relevant.

125.   **DOCUMENTS–D.27**  – **a** –  Job descriptions must exist (perhaps by different names).  State law does not cover the Principal overseeing bus loading at end of day, for example,or specifics of supervision of student adherence to seat belt use on the bus.  The request is for the specific wording of laws and rules relied upon by the School District to govern the Defendants' duties and performance, rather than for laws and rules for School Districts in general.

– **b** –  Defendants must follow directives from the School Board, which augments guidelines, rules,and mandates laid down by the law .

– **c** –  The State's laws and rules do not tell exactly what laws and rules the **Defendants** relied upon.

126.  **OBJECTIONS–D.28**          **OBJECTIONS–D.29**          **OBJECTIONS–D.30**
The requests are for copies of the law  the Defendants relied upon, not for the law generally, and are specific about the elements of law requested.  The requests are limited to relatively small elements of the law ––just those elements cited by the Defendants in short statements.  The Defendants claim they acted in accordance with the law in disciplining the Plaintiff.  The law  they relied upon is relevant.

127.  **DOCUMENTS–D.28**  The request is for the Defendants to disclose what wording they relied upon.  Laws change frequently, while the number designators may not.  The Defendants may have misinterpreted or misapplied the law.  The applicable law may in fact be a different one than the one relied upon by the Defendants.  The Defendants made similar requests of the Plaintiff, demonstrating they know this type request is legitimate.

128.  **DOCUMENTS–D.29**  Since this law is quoted, but not titled, it can't be found by the Plaintiff.

129.  **DOCUMENTS–D.30**  – **a** –  The School's policy was "derived" from some law or rules, but those laws or rules were not provided, as requested.

– **b** –  The Defendant failed to provide the specific version of the law relied upon.

– **c** –  The "TITLE IX" form used by the School was based upon some law or rule.  The Defendant failed to provide that law or rule.

130.  **OBJECTIONS–D.31**  The request is for the elements of the law  relied upon, and is specific about which elements of the law are being requested.  The request is limited to laws that govern obtaining personal information.  The Defendants obtained

personal information about the Plaintiff.  Whether they did so in accordance with the law is relevant.

131.   **DOCUMENTS-D.31**   The Defendants are bound to act in accordance with the law.  They got in touch with the Plaintiff's previous employers in 2003-2004 around the time of his dismissal and inquired about his performance.  They did so without his permission or knowledge.  It is legitimate to ask them to verify that they acted lawfully by presenting the law they relied upon.  This is especially relevant in light of their asking for the Plaintiff's permission before looking into his background for this lawsuit.

132.   **OBJECTIONS-D.32**   The request is for common records kept by the School--roster and schedule information for just recess aides for two grades.  The information is necessary to verify claims made by each party.

133.   **DOCUMENTS-D.32**   The School keeps records of which aides are assigned to what duty.  It has to in order to supervise them.  It also keeps IEP records, for example.

134.   **OBJECTIONS-D.33**   The request is for a few routine schedules and pertinent events engaged in by people key to the charges against the Plaintiff.  Scheduling information is relevant to the claims made by each party.

135.   **DOCUMENTS-D.33**   The School has to know who is assigned recess duty each year, each day, and each recess or it would not know if recesses were covered.  Look at the staff roster each year--aides' duties and assignments are listed as are their phone numbers.  Those staff rosters exist for past years.  The School provided some in answering these interrogatories.  The School also has records of recess duty assignments for past years.

136.   **OBJECTIONS-D.34**   The request is for workshops and workshop days out of class for only five second grade teachers over one year.  Scheduling is relevant to the claims made by each party.

137.  **DOCUMENTS–D.34**  Records are kept for teacher certification credits, for example, and for proof the School is providing educational updates, and to show  what they have provided in the past (to the School Board for example).  Plus, Daily Bulletins provide this information, as do records of substitutes working in the school.

138.  **OBJECTIONS–D.35**  The request is for days out of class for five teachers over one year.  Scheduling is relevant to the claims made by each party.

139.  **DOCUMENTS–D.35**  – a –  The School needs records for pay, for days off and vacations, for leaves of absence, and teacher accreditation.  The School and teacher 'X' have to be able to prove that  teacher 'X' actually took mandated courses. – b –  Substitutes are tracked, not only for assignment purposes, but in order to prove classes were covered, and for pay and hours worked.

140.  **OBJECTIONS–D.36**  The request is for two lists; just a few pages listing information already stored by the District.  This information relates to the charge of discrimination.

141.  **OBJECTIONS–D.37**  These records are necessary to address the matter of discrimination.  The Defendants claim these students were involved in special programs and needed special handling.  The records will verify if those claims are true. Each child on the list was extensively involved with the Plaintiff and the matters at issue. The court can address confidentiality if need be.  The Defendants have access to these records.  The Plaintiff is entitled to access too.

142.  **OBJECTIONS–D.38**  What the Defendant has may not be the same as what the Plaintiff sent.  The Plaintiff is entitled to know what the School is relying upon as his submitted defense.  The Defendants told the NHHRC investigator they would be happy to send him this document in its entirety.  If it was legitimate for the Investigator to see it in total, it is also legitimate for the Plaintiff to see it.  In addition, the Defendants have already stated they do not have some documents they provided to the Plaintiff and

NHHRC--the school memos--demonstrating the Plaintiff needs to verify what they have of his written defense.  Regarding the Plaintiff's "Dismissal Defense" documents, the Defendants told the Human Rights Commission:

> "Should you wish to review the entire submission we would be happy to supply you with either the originals or a copy.  The total submission contained in excess of one hundred (100) pages and several books."  (See  EXHIBIT-G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information – Request 3," page 2, dated September 21, 2004, from Edward Lawson.)

------------------------------------------------------------------------------

### 143.   DEFENDANTS' FURTHER ANSWERS – APRIL 20, 2007.

144.   On April 20, 2007, after the Plaintiff asked the Defendants for complete answers to his Interrogatories, they provided further answers, which contained only minor changes to their original incomplete answers.  A copy of their response is attached as EXHIBIT-E.

145.   In their further answers the Defendants stated that the nine unique written statements that applied directly to the matters at issue, which they provided in their original answers, were,

> "...the only documents relating to you and your termination from the Ray School... no additional documents exist."
> (See  EXHIBIT-E, "Defendants' Further Answers," second paragraph, page 1, dated April 20, 2007, from the Defendants.)

This answer is **not true**.  The Defendants themselves referred to several additional documents; not limited to, but including:

- Teacher Judy Harvey's written complaint against the Plaintiff.
- The background report filed by Lois Roland regarding the meeting of November 12, 2003 (While the Defendants claim this report is missing, they failed to provide a detailed account of its contents).
- The letter sent to notify the Plaintiff of the planned dismissal hearing, by Principal Williams on January 14, 2004.
- The Plaintiff's written defense left with Superintendent Greenbaum on March 4, 2004.
- The Dismissal Notice sent to the Plaintiff by Superintendent Greenbaum dated March 8, 2004.
- The Notice about the Plaintiff's dismissal sent to parents by Principal Williams dated March 10, 2004.

- The letters sent to Departments of Education in New Hampshire and Vermont by Superintendent Greenbaum dated March 17, 2004, which the Defendants included in their set of additional answers.
- Jennifer Congdon's reply letter to the Plaintiff dated March 17, 2004, which she copied to Principal Williams.
- The memos of calls and conversations between School District officials and the Plaintiff's previous employers, and with Education Departments that the Defendants provided to the N. H. Human Rights Commission in September, 2004.
- The numerous statements made to the N. H. Human Rights Commission by the Defendants from August of 2004 through 2005, which included further accusations against the Plaintiff.

146.   The Defendants refused to provide documents they had provided in previous circumstances (litigation) or that had originally been provided to them by the Plaintiff, claiming that it is common practice in litigation to refrain from sending multiple copies of the same document. However, the Defendants willingly provided, along with their original answers, documents they had provided several times previously. In fact, the Documents provided in Ray School's Attachments 3 and 4 to its original answers contain documents that have been sent back and forth many times since January, 2004. Indeed, the Defendants collectively provided **duplicate copies** of them in answering the Plaintiffs Interrogatories. Also, in their Interrogatories to the Plaintiff, the Defendants asked repeatedly for documents that the Plaintiff had provided previously, and asked for documents that originated from them, such as his job description and copies of employee handbooks.

(See EXHIBIT-B "Defendants' Interrogatories and Documents Requests to Plaintiff," Interrogatories – 8.f, 9.e, 10.g, 23.e,  Documents – 1, 2, 3, 11, 13, 14, 24, 25, 26, 27, 28, 29, dated April 11, 2006.)

147.   In answering the Plaintiff's request for "complete" answers the Defendants proclaim that they did provide complete answers and use the Plaintiff's example of an incomplete answer to prove their point. They state:

"Ms. Lavoie acknowledges that she listened to the tape after the Boitnoits (sic) brought it to her attention, but Mr. Williams did not. She tells you where she listened -- in her car. She tells you when -- the day after the tape was brought to her attention while driving in her car to Massachusetts.... As she was driving

in her car, it is obvious that Ms. Lavoie was alone when she listened to the tape. Her response explains that the tape was brought to her attention by the Boitnoits (sic)." (See EXHIBIT–E, "Defendants' Further Answers," first complete paragraph, page 2, dated April 20, 2007.)

This explanation still does not give any idea when these events took place; not even in which year. **The day after the tape was brought to her attention** says not a thing about a moment in time, since no date was provided of when the tape was brought to her attention.  Certainly Ms. Lavoie and the Defendants know if these events occurred prior to or after the Plaintiff's suspension; prior to or after the Plaintiff's Dismissal; prior to March 4, 2004, or on March 4, 2004, as Ms. Lavoie was specifically asked in the Interrogatory she was answering.  Ms. Lavoie at best could have given exact dates, at worst, could have bracketed the time to within a few days, but she and the Defendants did not, neither with their first set of answers nor with this answer.

– This answer does not tell which Boitnotts brought her the tapes.  That family consists of two parents and three children, at least.

– This answer states it is obvious Ms. Lavoie was alone in her car while listening to the tape, yet there is not a fact in her answer that makes that obvious.  Cars can carry more than one person.  In fact, if Ms. Lavoie was driving from her home in Vermont to Massachusetts, it could very easily be that she had others with her.

– In addition, both in her original answer and in this one, Ms. Lavoie provides no detail about the conversation she had with the Boitnotts either about the tape or about other matters as she was specifically asked to do.

148.   Ms. Debra Weiss Ford wrote:

"When I read the question asking for School 'memos,' I read this to mean a typewritten memo with a noted author, recipient, date, and subject."

The definition of memo is, 'a memorandum,' and a memorandum is defined as, 1.'a note or record made for future use'  2.'an informal written message'  3.Law – 'a document recording the terms of a contract or other legal details.'

(See "The Pocket Oxford American Dictionary of Current English," page 494, copyright 2002 by Oxford University Press.)

Certainly the original Interrogatory was not asking for a legal contract, which rules out definition #3. What was asked for was information about memos, i.e. information about **notes** or **informal written messages**, and Ms. Weiss Ford knows that. The memos asked about came from the Defendants in response to a request from the N. H. Human Rights Commission in 2004. The Plaintiff's original Interrogatories about these memos specified them by providing all the names mentioned in them; names recorded by and provided by the Defendants in those memos in 2004. The Plaintiff's Interrogatories were asking for precisely the information Ms. Weiss Ford proclaims he should have provided to the Defendants, i.e. who authored them and when?. These Interrogatories were from the Plaintiff to the Defendants, not the other way around. The **Defendants** are required to answer them, not the Plaintiff. Since the memos came from the Defendants, the Plaintiff can not know who authored them or when. The Defendants do know , but have twice refused to provide that information.

– In September, 2006, the Plaintiff provided the memos to the Defendants in his answers to their Interrogatories.

– In addition, several of the memos in question were very poor copies. The original memo paper apparently was colored (as office memos often are) and some copiers do not copy colored paper well. The copies had black backgrounds. With black type printed on black background some words are nearly impossible to read. That was one reason for asking for readable copies in the first place.

– In addition, the Plaintiff's original Interrogatory #10 to Defendant Lavoie asked about a handwritten note which was included as part of "Exhibit-A" of a submission the Defendants had provided to the Human Rights Commission dated September 21, 2004. Ms. Lavoie answered that she did not write "Exhibit-A." She could only know she did not write that page if she knew that page, i.e. if she knew of the September 21 submission,

knew what "Exhibit–A" contained, and knew which page in 'Exhibit–A' the Plaintiff was referring to. It is that same "Exhibit–A" that contains every one of the memos the Plaintiff asked the Defendants for. Even if the Defendants did not know which documents the Plaintiff was referring to, they could easily rule out non memo pages in that submission––in that "Exhibit–A," leaving only a handful of pages that contain the names the Plaintiff provided in his original Interrogatory––the memo pages.

(See EXHIBIT-G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information––Exhibit–A," dated September 21, 2004, from Edward Lawson.)

149.   The Defendants did provide in their "further answers" the two statements written by Janice Lavoie about Jane Metcalf's and Barbara MacNamee's complaints, with all lines readable.

(See EXHIBIT-E, "Defendants' Further Answers," [Attachment 000001, 'Sexual Harassment Complaint Form–Title IX––Jane Metcalf,' – January 7, 2004, and Attachment 000002, 'Sexual Harassment Complaint Form–Title IX––Barbara MacNamee, – January 9, 2004, both written by Janice Lavoie,] dated April 20, 2007.)

150.   The "S.T.O.P." booklet provided by the Defendants is not the same as the "S.T.O.P." booklet in use during the 2002/03 and 2003/04 School years. The Booklet during those two years did not include drawings by children, as the one provided does. The Booklet during those two years had just one rule written on page four. That rule read, "Treat everyone with respect and kindness." The Plaintiff emphasized this rule to the Defendants during his Dismissal Hearing on February 25, 2004. When he did, the Defendants refused to acknowledge the rule or even the existence of the "S.T.O.P." booklet. Again in his written Defense, which he left with the Defendants on March 4, 2004, the Plaintiff referred to that same rule on page four of the "S.T.O.P." booklet and included a copy of the "S.T.O.P." booklet with his Defense. The Defendants could have provided a true copy of the booklet the Plaintiff left with them, which was the copy in effect at the time (March, 2004).

------------------------------------------------------------------------------

151.  **DEFENDANT KENNETH GREENBAUM'S FURTHER ANSWERS:**

152.    **ANSWER-5**  The Defendant again failed to provide full details in
answering this question.  He first states that he cannot recall specifically what was told
to him, then proceeds to claim the Plaintiff sat next to a little girl at an assembly after
being told not to.  The Defendant admits he was informed of **a number of complaints**
regarding the Plaintiff, but does not state what those complaints were (other than the
"little girl" one).  He gives no details about who reported the numerous complaints, or
when, or where, or what events were reported, or who was involved in the events.

– Regarding the "little girl" accusation, Defendant Kenneth Greenbaum stated:

> "At a December assembly, Plaintiff engaged in appropriate (sic?) activity when he
> sat next to a little girl, despite the request that he refrain from such activity."
> (See  EXHIBIT-E, "Defendants' Further Answers," KEN GREENBAUM'S OBJECTIONS,
> Answer-5, end of second paragraph, page 3, dated April 20, 2007.)

This answer--this detail--about sitting next to a little girl was not provided by Dr.
Greenbaum or any other Defendant in their original interrogatory answers even though
they were each asked repeatedly to provide details.

– Both allegations in Defendant Greenbaum's statement are **false**.  The Plaintiff neither
sat next to a little girl he had been directed not to sit next to, nor was directed not to sit
next to any little girl.  Indeed, in each of his assigned classes and in assemblies, he
routinely sat next to little girls under the direction of his supervising teachers.  He was
never directed not to sit next to any particular girl, or girls generally, by a teacher or by
anyone.

153.    **ANSWER-6**  The Defendant again refused to provide details in
answering this question.  He states he was advised of the concerns of Lois Roland (Ray
School Counselor), but fails to tell what those concerns were.  He states he received all
his information from Principals Williams and Lavoie, but fails to state what they told him
about Lois Roland's "concerns" or what they told him about complaints from others.
Certainly, if those "concerns" were enough to cause the Defendant to dismiss the

Plaintiff, then he knows what those "concerns" were.

– The Defendant provided no details about his conversations with the Principals regarding these matters.  Mr. Williams/Ms. Lavoie were providing him with information serious enough to dismiss the Plaintiff, but the Defendant can't remember any specifics about what they said?  That is not likely.

– The Defendant states in this answer, "He was not advised of complaints by others." His statement contradicts answers from Defendant Ray School.  That Defendant admitted that educational assistants also registered complaints about the Plaintiff.

> "Concerns were expressed in an informal manner by a variety of teachers and educational assistants." (See EXHIBIT-D, "Defendant Ray School's Answers," Answer-4a, dated March 14, 2007.)

154.   **ANSWER-21**   The eight names listed by Defendant Greenbaum include no addresses or telephone numbers, as requested.  They are the names of the three defendants, four complaining teachers, and the School counselor.  No other names of people connected to the matters at issue were provided.  For a second time, the Defendant refused to answer this question, as asked.

(See EXHIBIT-E, "Defendants' Further Answers," KEN GREENBAUM'S OBJECTIONS, Answer-21, second paragraph, page 4, dated April 20, 2007.)

155.   **OBJECTIONS-S1**   The Defendant's educational background is relevant to this case.  Whether his credentials are accurate or valid matter.  If they are invalid he is not qualified to carry out the duties of Superintendent.  If they are falsely stated, then his credibility is destroyed, and his credibility is a serious issue in this case.

156.   **DOCUMENTS-S5**   The Plaintiff is entitled to know what copy or wording of laws the Defendants relied upon.  They are obligated to obey the law; so must know the law.  In addition, the Defendants failed to provide copies of laws which they referred to, but did not identify by title or number.  They refused in both their original answers and in these further answers.

(See EXHIBIT-D, "Defendant Ray School's Answers," Document Requests D28, D29, D30,

D31, dated March 14, 2007.)

– In addition, the Defendants provided other repeat documents to the Plaintiff––

teachers' complaints, the "Chronicle of Events," and "Meeting Notes." These are

documents they have provided frequently to the Plaintiff in previous litigation and

provided again in their answers to these Interrogatories.

(See EXHIBIT–D, "Defendant Lavoie's Answers," Exhibit–5, and "Defendant Williams'
Answers," Exhibit–5, and Defendant Ray School's Answers," Exhibits–3+4, dated March
14, 2007.)

157.   **INTERROGATORY NO. 11**   Still, Defendant Greenbaum does not recall

when he talked with Mr. Williams about asking the Plaintiff for his resignation.  But he

offers nothing; not even the year that talk occurred.  Certainly, the Defendant knows he

discussed this matter prior––prior––to asking for the Plaintiff's resignation (January 13,

2004) and after the later teacher complaints were reported (early January, 2004).  That

brackets the time to within fewer than two weeks and the Defendant likely can pinpoint

the time more precisely than that.  The Defendant admits in his original answers that he

relied solely on his memory to answer all the interrogatories (failing, apparently, even

to consult the Defendants' own attachments provided along with the interrogatory

answers of March 14, 2007).

(See EXHIBIT–D, "Defendant Greenbaum's Answers," Answer–22, dated March 14,
2007.)

---------------------------------------------------------------------------

158.   **DEFENDANT JANICE LAVOIE'S FURTHER ANSWERS:**

159.   **OBJECTIONS–2**   The Defendant's employment background is relevant to

this case.  If she has been disciplined by previous employers for dishonesty in dealing

with staff, that is relevant to this case.  If her employment record is falsely stated, then

her credibility is destroyed, and her credibility is a serious issue in this case.

160.   **OBJECTIONS–14**   The Defendant is required to provide names,

addresses, and telephone numbers of those involved in these matters and again has

refused to do so.  The list she provided includes no addresses or telephone numbers and is incomplete.  It does not list all those the Defendant knows were involved in these matters.

161.   **OBJECTIONS-A1**  The Defendant's educational background is relevant to this case.  Whether her credentials are accurate or valid matter.  If they are invalid she was not qualified to carry out the duties of Assistant Principal.  If they are falsely stated, then her credibility is destroyed, and her credibility is a serious issue in this case.

162.   **ANSWER-12-e**  The Defendant's answer is **not true**.  Ms. Lavoie admits in her original answers that she talked with Jeff Robbins at the Dartmouth Child Care Center.

(See  EXHIBIT-D, "Defendant Lavoie's Answers," Answer-9a, dated March 14, 2007.)

-----------------------------------------------------------------------------------

163.   **DEFENDANT BRUCE WILLIAMS' FURTHER ANSWERS:**

164.   **OBJECTIONS-2**  The Defendant's employment background is relevant to this case.  If he has been disciplined by previous employers for dishonesty in dealing with staff, that is relevant to this case.  If his employment record is falsely stated, then his credibility is destroyed, and his credibility is a serious issue in this case.

165.   **OBJECTIONS-11**  The information sought is relevant.  The handling of the discipline of other staff members is directly relevant to the question of discriminatory behavior toward the Plaintiff.

166.   **ANSWER-11**  The Defendant's answer is **not true**.  When Mr. Williams first informed the Plaintiff, months after the Plaintiff's dismissal, of other individuals being "counseled," he stated **four individuals** were so counseled, not three.

(See  EXHIBIT-G, Respondent's "Response to [N. H. Hum. Rights] Commissions 1st Request for Information—Exhibit-D," pages 69–72, dated September 21, 2004, from Edward Lawson.)

167.   **OBJECTIONS-19   ANSWER-19**  The Defendant is required to provide

names, addresses, and telephone numbers of those involved in these matters and again has refused to do so. The list he provided includes no addresses or telephone numbers and is incomplete. It does not list all those the Defendant knows were involved in these matters.

168.   **OBJECTIONS-P1**   The Defendant's educational background is relevant to this case. Whether his credentials are accurate or valid matter. If they are invalid he is not qualified to carry out the duties of Principal. If they are falsely stated, then his credibility is destroyed, and his credibility is a serious issue in this case.

169.   **OBJECTIONS-P3**   The Defendant admits he relied upon Title-IX law to condemn the Plaintiff. He is therefore obligated to provide the specific elements of that law he relied upon; so the Plaintiff can verify if the Defendant acted in compliance with the law. The Defendants sought similar information from the Plaintiff when asking him for his "understanding" of what School policy was regarding the matters at issue. The Defendants not only should know School policy, but they established it, yet they still asked the Plaintiff for his interpretation of that policy. This request is similar.

-------------------------------------------------------------------------

170.   **DEFENDANT RAY SCHOOL'S FURTHER ANSWERS:**

171.    **OBJECTIONS-6**   School videos are relevant to the matters at issue. They provide visual evidence of the kinds of things that teachers, staff, administrators, and others say to and in the presence of students, as well as evidence of normal and appropriate actions and practices the School engages in; all of which could establish if the Plaintiff was treated the same as others, i.e. if he was discriminated against. After all, the Plaintiff was dismissed for allegedly acting inappropriately in precisely the settings recorded on the School's videos--school assemblies.

- In addition, the videos are not "confidential" as claimed by the Defendant. The Defendant admits they are available to be viewed by the public in the School library.

(See EXHIBIT-D, "Defendant Ray School's Answers," Answer-6, dated March 14, 2007.)

172.   **ANSWER-15**   The Defendants did indeed provide memos to the Human Rights Commission and to the Plaintiff, in a submission titled, "Response to Commissions 1st Request for Information from Respondent," dated September 21, 2004, signed by the School's lawyer at the time, Edward Lawson.  Please note, in this Answer-15 itself, the Defendants admit contacting three of the people named in the memos requested; information consistent with the original use of the memos in question.  The memos likely refer to some of these contacts.  The Defendants again refuse to acknowledge the memos or to provide clear copies of them, or to answer the questions asked about them, as requested.

– In addition, the Plaintiff provided all the memos in question in his answers to the Defendants' Interrogatories to him of September, 2006.  Those answers  included a copy of the Defendants' Response to the N. H. Human Rights Commission dated September 21, 2004, which included the memos.

(See EXHIBIT-G, "Respondent's Response to [N. H. Hum. Rights] Commissions 1st Request for Information––Exhibit-A," dated September 21, 2004, from Edward Lawson; See also EXHIBIT-C, Plaintiff's "Interrogatories and Documents Requests to Defendants," Defendant **Greenbaum's** Interrogatory, number 16, Defendant **Lavoie's** Interrogatory, number 10, and Document Requests, numbers A7, A8, Defendant **Williams'** Document Requests, number P6, Defendant **Ray School's** Interrogatories, numbers 7, 13b, 15, and Document Requests, numbers D8, D9, D10, D11, dated November 22, 2006.)

173.   **ANSWER-19**   The Defendant's answer differs from the answer provided to this interrogatory originally.  The Defendant here admits the Music Teacher, Donna Butler, was **not spoken to or disciplined** for hugging students, which is a different answer than the original one that, "there is no such information or records" regarding discipline of the Music Teacher.

174.   **ANSWER-20**   The Defendants answer here is **not true.**  The Plaintiff's question asks for communications with anyone, other than the Defendants, regarding

the Plaintiff **or the matters at issue**, which is far different and much more limited than the question stated by the Defendant in this answer, "(Plaintiff)... is asking for any conversation anyone ever had regarding the Plaintiff."

175.   **OBJECTIONS-22   ANSWER-22**   The Defendant is required to provide names, addresses, and telephone numbers of those involved in these matters and again has refused to do so.  The list provided includes no addresses or telephone numbers and is incomplete.  It does not list all those the Defendant knows were involved in these matters.

176.   **DOCUMENTS-D3**   The Defendant's answer here is **not true**.  There was at least one report authored by Lois Roland of the November 12, 2003, meeting which was not provided.  The Defendants' claim that the report can not be found does not excuse them from providing a detailed account of its contents.  The Defendants also admit they reported to the Hanover School Board about the Plaintiff's dismissal and the litigation over these matters.  The Board keeps records, but the Defendants failed to provide them.

177.   **OBJECTIONS-D7**   School videos are relevant to the matters at issue. The Plaintiff was dismissed for allegedly acting inappropriately in precisely the settings recorded on the School's videos--school assemblies.  In addition, the videos are not "confidential" as claimed by the Defendant.  The Defendant admits they are available to be viewed by the public in the School library.

(See EXHIBIT-D, "Defendant Ray School's Answers," Answer-6, dated March 14, 2007.)

178.   **DOCUMENTS-D14**   The Defendant again failed to provide a list of the people who were sent the "Notice to Parents" regarding the Plaintiff, dated March 10, 2004, and written by Bruce Williams, .

179.   **DOCUMENTS-D24**   The Defendant does know the names of teachers and aides who provided after school programs during the 2002/03 and 2003/04

school years.

180.   **DOCUMENTS-D26**   The Defendant did not provide its Sexual

Harassment Policy, which it provided to the N. H. Human Rights Commission (along with

two of the teachers' Sexual Harassment Complaint Forms upon which they had written

their complaints against the Plaintiff), in August of 2004.

(See EXHIBIT-F, Respondent's "Response to Complaint--Exhibit-A," [N. H. Hum. Rights
Comm.], dated August 6, 2004, from Bruce Williams.)

181.   **DOCUMENTS-D28-D29-D30-D31**   The Defendant failed to provide

the elements of law it relied upon in response to these requests, even those elements of

law that were quoted or paraphrased, but not identified by title or number.

182.   **DOCUMENTS-D32-D33-D34-D35**   The Defendant again failed to

provide the lists requested; lists which are routine records maintained by the School for

normal things such as determining work hours for pay, records used to prove the

School is adhering to local, state, and federal mandates, and records used to verify

teacher and staff credentials, re-certification credits, and ongoing training.

183.   **DOCUMENTS-D36**   The Defendant admits providing to the N. H.

Human Rights Commission examples of "other" staff members who were counseled

during the school-year in question (2003/04) for conduct with students considered

inappropriate; so the Defendant does not consider disciplinary actions too confidential

to be revealed in legal settings such as this lawsuit.  The School provided those

instances of disciplinary actions to show the Commission it had not discriminated

against the Plaintiff.  By so doing the Defendant demonstrated that disciplinary actions

are indeed relevant to the charge of Discrimination.

184.   **DOCUMENTS-D37**   The reports requested here pertain to several

students who were involved with the matters at issue, including the two students at the

center of the School's complaints against the Plaintiff.  Of course such records are

material to the matters at issue.  The Defendant used the "special" cases of these

students' to criticize the manner in which the Plaintiff was dealing with them.

185.   **DOCUMENTS-D38**   The Defendant again refuses to provide a copy of the Plaintiff's written defense against the charges filed against him by the School, which he presented to the Superintendent on March 4, 2004, prior to his dismissal.

186.   **ANSWER-16**   The authorizations sought are not intended to authorize the Defendant to release Police information, but as Attorney Weiss Ford knows, are meant to demonstrate to the Police that the Defendants give their permission for the Plaintiff to be given copies of the records sought.  What the Police are permitted to release to the Plaintiff is up to the Police Department.  It certainly will not release any records the law prohibits it from releasing, even with the Defendants' authorization.  The Defendants asked the same of the Plaintiff.  They sought and obtained the Plaintiff's authorization to receive copies of Police records on him.  They do the same thing with every prospective employee they consider hiring.

-----------------------------------------------------------------------------

187.   The Defendants took four months to provide their answers to the Plaintiff's interrogatories.  The Plaintiff agreed to let them take that much time in the belief they were using it to compile the complete story of events surrounding his dismissal, and so they could gather and copy the many documents necessary to satisfy his requests.  Instead, after four months, the Plaintiff was provided with almost no details of the Defendants actions regarding the Plaintiff's dismissal.

188.   The Defendant's incomplete responses render the interrogatory phase of discovery meaningless; deny the Plaintiff the information and evidence needed to pursue his case knowledgeably; and deny justice.

WHEREFORE, the Plaintiff prays that this Honorable Court:

A.      Issue an Order compelling the Defendant to provide <u>complete</u> and <u>truthful</u> Answers to Interrogatories, and <u>complete</u> Responses to Requests for

Production of Documents Pursuant to Fed. R. Civ. P. 37(a), no later than 5 (five) days from the date of the Court's Order; and

B.    Compel the Defendants to provide authorizations to allow the Plaintiff to gather records of the Defendants' previous work history, their communications with the Hanover Police regarding the Plaintiff, and the full record of their communications with the Departments of Education in New Hampshire and Vermont; and

C.    Compel the Defendants to send him copies of the videos of Mini-recitals and Sing-a-longs they have from the 2002/03 and 2003/04 school years, as well as the farewell assembly honoring the Music Teacher, Donna Butler, recorded during December, 2003. If those videos have been recorded over, then send the most current videos of Mini-recitals they do have; identifying each event taped and the date it was recorded; and

D.    Since the Defendants now deny that they provided the N. H. Human Rights Commission and the Plaintiff with school memos/notes, the Plaintiff asks the Court to Compel the Defendants to provide copies of all documents forwarded to the Defendants and/or submitted by the Defendants throughout all the proceedings of the N. H. Human Rights Commission's investigation of the Plaintiff's Discrimination Complaint against the Defendants, from start to finish; and

E.    Grant such other and further relief as is just and equitable.

<u>CONCURRENCE STATEMENT, LR 7.1(c)</u>

The Plaintiff granted the Defendants additional time to provide complete answers and responses. While the Defendants have corrected a small number of errors in their further answers, they dispute the claim their answers are incomplete. Attempts to resolve this issue with the Defendant failed. No concurrence was reached.

<u>MEMO STATEMENT, LR 7.1(a)(2)</u>

Due to the nature of this Response, no Memorandum of Law is required.

Respectfully Submitted,
JACK VAUGHAN – PRO SE

Date:   May 4, 2007                         By: _____

Jack Vaughan, pro se
108 Olive Street
Springfield, VT 05156
802  885–5005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Motion to Compel Answers was mailed via First Class United States Mail, postage prepaid, to:

Debra Weiss Ford, Esquire, 216 Lafayette Road, Suite 103, North Hampton, NH 03862

Date:   May 4, 2007

Jack Vaughan, pro se