```
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE
```

Jack Vaughan

    v.                                     Civil No. 05-cv-223-JD
                                              Opinion No. 2007 DNH 112

Bernice A. Ray
Elementary School, et al.

## O R D E R

Jack Vaughan, proceeding pro se, brings a claim of gender discrimination under Title VII of the Civil Rights Act against the school where he was employed as a teacher's aide, the former superintendent of schools, the principal, and the assistant principal. Vaughan also brings a state law defamation claim. The defendants move for summary judgment, contending that Vaughan cannot prove either claim. Vaughan objects, contesting the defendants' version of the circumstances that led to his dismissal.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Background

Jack Vaughan was employed at the Bernice A. Ray Elementary School ("the School") as a teacher's aide in a second grade classroom for the 2002 to 2003 school year and from September of 2003 to March of 2004. Kenneth Greenbaum was superintendent of schools; Bruce Williams was the principal, and Janice Lavoie was assistant principal. During Vaughan's first year at the School, he was a teacher's aide in a second grade classroom taught by Judy Harvey. That year went by uneventfully.

In his second year, Vaughan worked half of the week in Judy Harvey's classroom and the other half in Barbara MacNamee's classroom. From the beginning of the second year, teachers expressed concerns to Williams about Vaughan's interactions with

certain students.  In particular, the teachers thought that Vaughan spent too much time with certain girls on the playground during recess.

On November 12, 2003, Williams called Vaughan to a meeting in his office to discuss the concerns the teachers had raised. Lois Roland, a school counselor, also attended the meeting. Williams and Roland told Vaughan to change his behavior on the playground.  They told him to spend less time with a group of about seven children, and that they were particularly concerned with the amount of time he spent with two shy seven-year-old girls who held his hand and clung to him during recess.  They told Vaughan that they were concerned about his physical interactions with the two girls.  Williams and Roland also told Vaughan to stop tape-recording children during recess, distributing questionnaires about the stories Vaughan had written, and using his body to surround children which looked like he was trapping them.  He was told to spend more time with boys on the playground.  Superintendent Greenbaum was notified of the meeting.

Vaughan acknowledges that he was told to set physical boundaries in his interactions with the students who liked to hold his hand.  He contends, however, that the instructions were vague.  He also contends that the two girls were not shy because

they initiated contact with him, and "[s]hy girls do not do such things." Obj. at 3. Vaughan felt he could not abruptly change his contact with those students because they would feel rejected. He states that Williams agreed with him. Vaughan asserts that he tried to "subtly encourage two girls to play on their own, without making them feel rejected . . . but they were persistent and occasionally he gave in to their pleas to hold his hand." Obj. at 2. Vaughan also states that Williams did not instruct him to limit his contact with the two girls during school time, other than recess, or after school.

    No complaints were made in December. In January of 2004, several teachers filed complaints about Vaughan's boundary issues with students which were similar to the complaints made in November. One teacher noted that Vaughan continued to hold hands with the two girls on the playground and looked as if he were holding them captive, that he had three girls standing in front of him after school "looking like soldiers," and that a story Vaughan had written used names of current students in the School and described unusual touching between two sisters. Barbara MacNamee, the teacher with whom Vaughan worked half of each week, complained that Vaughan was engaging in flirtatious behavior with two girls at an assembly, including allowing one girl to put her leg in his lap while he read a story, and that he was still

holding hands with the same two girls and spending a disproportionate amount of time with them in her classroom. MacNamee reported that she had discussed her concerns with Vaughan.  Another second-grade teacher complained about Vaughan flirting with the girls at the assembly.

In response to these complaints, Williams called a meeting with Vaughan on January 13, 2004.  Williams told Vaughan that he had not changed his behavior as he had been instructed to do.  As a result, he was given the option of resigning his position or being terminated.  Vaughan declined to resign and was placed on administrative leave with pay as of January 14, 2004.  Judy Harvey, Vaughan's original supervising teacher, filed a complaint on January 26, 2004, stating that Vaughan had been over-friendly with students, that he wrapped his arms around them trapping them, that the messages in his stories were inappropriate, and that a framed picture taken from a Reader's Digest magazine, which Vaughan kept on his desk, made her uncomfortable.

A hearing was held on January 27, 2004, which included Greenbaum, Williams, Lavoie, and Vaughan, who was represented by counsel.  The hearing was continued at Vaughan's request and resumed on February 25, 2004.  The final day of the hearing was March 4, 2004.  Vaughan contends that the hearing was not conducted properly because several teachers and the principal

left, and he was not permitted to present his defense as he intended to do.

Because he disapproved of the hearing procedure, Vaughan did not attend the final day, although his counsel did attend. Vaughan submitted a written defense, that is dated February 5, 2004, in which he contended that female teachers were allowed to engage in conduct that he was excluded from doing, including hugging children, holding hands, and holding a classroom sleep over. His defense included a piece he had written titled "Adults for Compassionate Touching" with a part dedicated to Andrea, one of the two "shy" seven-year-old girls he had spent time with on the playground, along with other materials.

"Andrea's Manifesto" begins with the following statement: "We appeal for the appropriate touching of children. We believe all decent adults should feel free to enjoy children, rather than afraid to do so. Children need to be touched, held, hugged, and caressed. We want to feel free to fill that need." Vaughan then provides some autobiographical information interspersed with references to other materials. The piece concludes with: "And not being able to hold Andrea, laugh with her, and see the excitement she has for me, simply because I am, will hurt, will hurt the most. I WANT TO KEEP WORKING HERE! I WANT TO KEEP WORKING HERE!" Id.

Also on March 4, the final day of the hearing, Vaughan gave a tape of love songs to Andrea's parents to give to her if they wanted her to have the tape.  The songs on the tape included "Love You," "Every Breath You Take," "Ghost in Love," "Friday I'm in Love," "Love Stinks," "I Want to Grow Old with You," "Breakfast in Bed," and others.  Andrea's parents were upset by the tape and reported it to school officials.

Superintendent Greenbaum decided to terminate Vaughan's employment and sent him a letter dated March 8, 2004, in which he explained that the termination decision was based on Vaughan's belief that his behavior was appropriate and did not need modification.  On March 10, Williams sent a notice to parents of second and third grade students who had been in class with Vaughan to advise them that he was no longer employed at the School.  The letter stated that "the administration has made it clear to him that he has no further business on Ray School property.  We have also told him that he is not to contact Ray School parents or students.  We think it would be appropriate for you to have a conversation with your child about this matter and to let your child know that he/she should have no further contact with this former employee."  The School also notified the Vermont and New Hampshire Departments of Education of Vaughan's dismissal.

7

Vaughan contends that Williams overstated the situation because he was asked, not directed, to stay away from students and their families. He argues that Williams's letter made him sound dangerous and threatening. Vaughan cites responses to the school from some parents to support his interpretation.

Vaughan filed a complaint with the New Hampshire Human Rights Commission, alleging that he was dismissed from his teacher's aide position at the School because of his gender. He alleged that complaints against him were concocted and that female staff members were treated differently with respect to their interactions with female students. The Commission concluded that Vaughan had not shown that he was dismissed because of his gender, rather than because he refused to set and abide by appropriate limits in his interactions with students, or that female teachers were similarly situated to him and were treated more favorably. Therefore, the Commission found no probable cause and closed its file.

## Discussion

Vaughan asserts in this action that the School discriminated against him because of his gender. He also alleges a state law defamation claim. The defendants move for summary judgment, asserting that Vaughan cannot prove discrimination based on

gender and ask the court not to exercise supplemental jurisdiction over the defamation claim. Alternatively, the defendants seek summary judgment on the defamation claim.

A.  Discrimination

In the absence of direct evidence of discrimination, a plaintiff must "raise an inference of discrimination through the familiar McDonnell Douglas burden-shifting framework." Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006). To withstand summary judgment on a claim of employment discrimination, a plaintiff must show that he is a member of a protected class, his job performance met his employer's legitimate expectations, he was discharged, and he was replaced by someone with similar skills or qualifications. See Straughn v. Delta Airlines, Inc., 250 F.3d 23, 33 (1st Cir. 2001). If a prima facie case is made, "the burden shifts to the employer to establish a legitimate, non-discriminatory reason for its adverse employment action." Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 14 (1st Cir. 2007). The burden then shifts back to the plaintiff "to show that the proffered reason was mere pretext, and that the true reason was prohibited discrimination." Id.

Even if it were assumed that Vaughan could establish a prima facie case, which is highly doubtful, he cannot show that the

School's reason for terminating him was a pretext for unlawful discrimination.  Vaughan's interactions with female students caused a great deal of concern, understandably so, and provided a legitimate basis for the School to consider terminating his employment.  Vaughan's defense, however, provided the sine qua non for discharge, establishing that he did not understand or accept the appropriate limits the School set for his behavior with female students.  His decision to give a tape of love songs to one of the students confirmed the improper motivation that the teachers and the School had suspected.

Vaughan's examples of female teachers interacting in physical ways with students do not show that he was singled out for reprimand because he is male.  Instead, his examples and arguments bolster the School's concern that he does not understand or refuses to accept appropriate roles for teachers in their interactions with students.  Vaughan has not shown that he was treated differently, because of his gender, from others who were similarly situated.  See Kosereis v. Rhode Island, 331 F.3d 207, 213-14 (1st Cir. 2003).

There being no material factual dispute, summary judgment in favor of the defendants is appropriate on the Title VII claim.

B.  Defamation

Vaughan also brings a claim of defamation under New Hampshire law.  When, as here, a district court has dismissed the claim over which it had original jurisdiction, the court may exercise its discretion to decline supplemental jurisdiction as to a remaining state law claim.  28 U.S.C. § 1367(c); Marrero-Gutierrez v. Molina, 491 F.3d 1, 7 (1st Cir. 2007).  As that is appropriate in this case, the defamation claim is dismissed, without prejudice.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 45) is granted.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

September 12, 2007

cc: Nancy Ellen Boudreau, Esquire
    Debra Weiss Ford, Esquire
    Jack Vaughan, pro se